EXHIBIT D



333 South Hope Street | 48th Floor | Los Angeles, CA 90071-1448
213-620-1780 *office* | 213-620-1398 *fax* | *www.sheppardmullin.com*

Writer's Direct Line: 213-617-5547
gdeboskey@sheppardmullin.com

Our File Number: 0NRF-130879

December 7, 2007

**VIA FACSIMILE AND U.S. MAIL**
Valerie L. Sharpe, Esq.
Keller Grover LLP
425 Second Street, Suite 500
San Francisco, California 94107

Re:    Sullivan v. Kelly Services, Inc.

Dear Valerie:

This shall serve as a response to your November 16, 2007 meet and confer letter concerning Kelly Services, Inc.'s ("Defendant" or "Kelly") responses to Plaintiff Catherine Sullivan's ("Plaintiff") Request for Production of Documents. Kelly maintains that its objections and initial disclosures are proper, but will respond in kind to each of the issues raised in your letter.

**Defendant's General Objections**

Your letter contends that Defendant's general objections regarding the attorney-client privilege and work product doctrine, as well as its objection that it has not completed its investigation, are improper. As to the first objection, we did not choose to withhold any documents we reviewed based on a claim of privilege. With respect to the second objection, Defendant engaged in a reasonable and diligent search for responsive documents. However, due to the size and breadth of a Company such as Kelly, it is possible that we will in the future become aware of additional documents. Thus, we simply preserved our right to engage in a supplemental production if we become aware of additional responsive documents.

**Defendant's Responses to Plaintiff's Requests for Production Nos. 7, 14, 15, and 16**

Your letter further contends that Plaintiff is entitled to the documents responsive to Requests 7, 14, 15, and 16 for the time-period of April 20, 2003 to the present, which is the purported class period. As explained in the October 9, 2007 letter accompanying Defendant's responses, because this matter has not been certified, Plaintiff is not yet entitled to discover information that goes to the merits or damages phase of a class action. While some pre-certification discovery is fair and warranted, there are limits. See Tracy v. Dean Witter Reynolds, Inc., 185 F.R.D. 303, 304 (D. Colo. 1998) (holding that requests for pre-certification discovery should "not [be] so broad that the discovery efforts present an undue burden to the

SHEPPARD MULLIN RICHTER & HAMPTON LLP

Valerie L. Sharpe, Esq.
December 5, 2007
Page 2

defendant"). Moreover, the statute of limitations applicable to Plaintiff's claim for Labor Code Section 203 penalties is one-year. McCoy v. Superior Court, No. G038589, 2007 Cal. App. LEXIS 1946 (2007). Therefore, we are willing to supplement our production to the extent necessary to cover the one-year period prior to the filing of Plaintiff's lawsuit.

## Defendant's Response to Plaintiff's Request for Production No. 9

In your letter, you object to Defendant's response to Plaintiff's request for documents showing the dates and times during which Plaintiff performed work for a Kelly Services client. However, you do not explain the reason why such documents are relevant to Plaintiff's claim. Indeed, Plaintiff alleges that Kelly terminated her employment each time she ended an assignment with a Kelly client. Thus, the date relevant to Plaintiff's claim is the date an assignment ended. There is no reason why Plaintiff's hourly time records are relevant to this claim. Please inform me if I have misunderstood your argument or if there are any additional reasons why you believe that Plaintiff's time records are relevant to her claims. Otherwise, because this request is overbroad and Defendant has already provided documents disclosing the date when Plaintiff's assignment ended, Defendant will not supplement its response at this time.

## Defendant's Responses to Plaintiff's Requests for Production Nos. 21, 22, and 23

Again, Defendant's position is that Plaintiff is not entitled to discover information that goes to the merits or damages phase of a class action, as the case has not yet been certified as a class action. During this initial phase of the litigation, Plaintiff may only seek such information that relates to her claims as the named Plaintiff and to limited discovery regarding the class issues. These requests, as worded, are vague, ambiguous, and overbroad. To require Defendant to review and produce documents submitted to three different agencies over a ten-year period for each of thousands of employees is burdensome and oppressive. Therefore, Defendant will not supplement its response at this time.

## Defendant's Initial Disclosures

In an effort to protect the privacy of the individuals including in Defendant's initial disclosures, Defendant will not provide their telephone numbers or addresses. These individuals may instead be contacted through counsel at the following address: Sheppard, Mullin, Richter & Hampton LLP, 333 S. Hope Street, 48th Floor, Los Angeles, California 90071-1448, (213) 620-1780.

Furthermore, you contend that Defendant is obligated to provide the subjects of information known by each individual listed in its initial disclosures. Defendant will supplement its initial disclosures.

SHEPPARD MULLIN RICHTER & HAMPTON LLP

Valerie L. Sharpe, Esq.
December 5, 2007
Page 3

Finally, Defendant is obligated to disclose the names and contact information, if known, for "individuals likely to have discoverable information that the disclosing party may use to support its claims or defenses..." Rule 26(a)(1)(A) (emphasis added). In your letter, you set forth names and categories of persons whom you contend Defendant should have included in its initial disclosures. Defendant will supplement its initial disclosures to add the names of the Kelly employees you noted. Furthermore, Kelly will perform an investigation to determine whether individuals employed by a Kelly client, such as Managed Health Network, has information relevant to the issue of when the Plaintiff ended her employment with *Kelly*. Therefore, Defendant does not believe it is necessary to supplement its initial disclosures to include these individuals at this time.

Please contact me at your earliest convenience to discuss the above issues.

Sincerely,

Geoffrey D. DeBoskey ꟼꟼH

for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

W02-WEST:1LDT1\400563112.1

cc:    Derek R. Havel

EXHIBIT E

# KELLER GROVER LLP

425 SECOND STREET, SUITE 500
SAN FRANCISCO, CALIFORNIA 94107
TELEPHONE: (415) 543-1305
FAX: (415) 543-7861

*Valerie L. Sharpe, Esq.*
*Of Counsel*
*(510) 569-6998 (direct)*
*vsharpe@kellergrover.com*

December 10, 2007

**BY FAX & U.S. MAIL**
**213.620.1398**

Geoff Deboskey, Esq.
Sheppard, Mullin, Richter & Hampton LLP
333 South Hope Street, 48th Floor
Los Angeles, California 90071

Re:    **Sullivan v. Kelly Services, Inc.**

Dear Geoff:

I am writing in response to your letter dated December 7, 2007 regarding our initial meet and confer letter of October 26, 2007.

Privilege Log

Defendant contends that it has not withheld any responsive documents on grounds of privilege. As such, Defendant will not provide a privilege log at this time. Please confirm, however, that if you do subsequently discover responsive documents that are not produced on grounds of privilege that you will promptly provide a privilege log.

Plaintiff's Request for Production Nos. 7, 14, 15 and 16

Defendant's intentions regarding supplemental production are somewhat unclear. It appears that Defendant intends to produce responsive documents for a one year period irrespective of whether the documents pertain directly to Plaintiff. Thus, please confirm that Defendant will be producing any additionally responsive documents for the time frame April 20, 2006 to present. If there are no additionally responsive documents, please confirm this in writing no later than December 14, 2007.

Geoff Deboskey, Esq.
December 10, 2007
Page 2

Plaintiff's Request for Production No. 9

As stated in our prior correspondence, Plaintiff seeks documents showing the dates and times during which Plaintiff performed work for Defendant in order to assess the validity of her claims under Labor Code §§ 201 and 202. Because the validity of her individual claims could be raised as a challenge to class certification, Plaintiff is entitled to such discovery prior to class certification. Unless Defendant provides, by December 14, 2007, a date certain on which it will produce such documents, Plaintiff will move to compel.

Plaintiff's Request for Production Nos. 21, 22 and 23

These requests seek documents that are directly relevant to class certification. That is, if Defendant has taken a consistent position as to when employment ends, such evidence goes to issues of commonality and typicality. We are willing, however, to limit the request to the five year period prior to the filing of the Complaint on April 20, 2007. If Defendant will agree to produce the requested documents for this limited time frame, please advise no later than December 14, 2007 when we can expect to receive such documents. If Defendant will not agree to produce documents for this limited time frame, we will move to compel.

Defendant's Initial Disclosures

To the extent any of the individuals identified in Defendant's initial disclosures are former employees of Defendant, Plaintiff is entitled to the last known address and telephone number of those persons. Please provide, no later than December 14, 2007, any such addresses and telephone numbers or confirm, in writing, that all persons identified are current employees of Defendant.

With respect to Defendant's agreement to supplement its initial disclosures to reflect the information known by disclosed witnesses, we will expect to receive such supplemental disclosures no later than December 14, 2007. If Defendant's supplemental disclosures are not provided by that time, we will move to compel such information.

Additionally, Defendant admits that it did not complete its investigations of the facts prior to serving its initial disclosures and states that it will now investigate whether any client of Defendant has information that may be used in support of its claims or defenses. Defendant states, however, that it does not intend, at this time, to supplement its disclosures to reflect any subsequently discovered witnesses. Such position is indefensible and, with a February 22, 2008 pre-certification discovery cut-off, unacceptable. Unless Defendant commits to a date certain on which to (1) supplement its initial disclosures to identify any of these potential additional witnesses or (2) confirm in writing that it has completed this element of its investigation and has not identified any additional witnesses, Plaintiff will move to compel on this issue.

Geoff Deboskey, Esq.
December 10, 2007
Page 3


Given the length of time within which Defendant took to respond to our initial meet and confer letter, the paucity of the ensuing response and the February 22, 2008 pre-certification discovery cut-off, we must demand a written response to this correspondence no later than the close of business on December 14, 2007. Alternately, if you would like to schedule a telephone conference to meet and confer regarding the aforementioned outstanding issues, I am available on December 13, 2007 between 1:00 p.m. and 4:30 p.m. You may contact me by email or on my direct line to schedule such a call.


Sincerely,

*Valerie L. Sharpe /ss/*

VALERIE L. SHARPE

EXHIBIT F



333 South Hope Street | 48th Floor | Los Angeles, CA 90071-1448
213-620-1780 *office* | 213-620-1398 *fax* | *www.sheppardmullin.com*

Writer's Direct Line: 213-617-5547
gdeboskey@sheppardmullin.com

Our File Number: 0NRF-130879

December 14, 2007

**VIA FACSIMILE AND U.S. MAIL**
Valerie L. Sharpe, Esq.
Keller Grover LLP
425 Second Street, Suite 500
San Francisco, California 94107

Re:    Sullivan v. Kelly Services, Inc.

Dear Valerie:

This shall serve as a response to your December 10, 2007 meet and confer letter concerning Kelly Services, Inc.'s ("Defendant" or "Kelly") responses to Plaintiff Catherine Sullivan's ("Plaintiff") Request for Production of Documents. Please be advised that we did not receive your initial meet and confer letter until November 16, 2007. Therefore, your implication that Kelly has delayed in its response is unwarranted. Kelly maintains that its objections and initial disclosures are proper, but will respond in kind to each of the issues raised in your letter.

**Privilege Log**

Kelly will produce a privilege log if it becomes aware of additional responsive documents that are protected by the attorney-client privilege and/or work product doctrine.

**Defendant's Responses to Plaintiff's Requests for Production Nos. 7, 14, 15, and 16**

Kelly has produced documents which are currently in its possession, custody or control. Kelly will supplement its production to the extent that additional documents are found to cover the one-year period prior to the filing of Plaintiff's lawsuit irrespective of whether the documents pertain directly to Plaintiff.

**Defendant's Response to Plaintiff's Request for Production No. 9**

Your most recent letter simply reiterates the reasons set forth in your November 16, 2007 letter as to why documents related the dates and times Plaintiff worked are relevant to this action. We continue to disagree with your assertions. Plaintiff alleges that she was terminated from Kelly each time an assignment ended. Kelly has already produced documents related to the date Plaintiff's assignment with Kelly ended. Therefore, her actual work dates and times are simply irrelevant. Therefore, because this request remains overbroad and Kelly has already provided responsive documents, Kelly will not supplement its response at this time.

SHEPPARD MULLIN RICHTER & HAMPTON LLP

Valerie L. Sharpe, Esq.
December 14, 2007
Page 2

## Defendant's Responses to Plaintiff's Requests for Production Nos. 21, 22, and 23

Kelly's position is that Plaintiff is not entitled to discover information that goes to the merits or damages on a class-wide basis because the case has not been certified, and we do not believe it is certifiable. Furthermore, despite your offer to limit these requests to the five-year period prior to Plaintiff's filing of her Complaint these requests, as worded, are still vague, ambiguous, and overbroad. It is burdensome and oppressive to require Defendant to scour through documents submitted to each of the three specified agencies over a five-year period for each of thousands of employees in order to then make a conclusion regarding whether the documents evidence, relate to, or concern "a consistent position as to when employment ends." Therefore, Defendant will not supplement its response at this time.

## Defendant's Initial Disclosures

None of the persons listed in Kelly's initial disclosures are former employees. Therefore, those individuals may be contacted through counsel at the following address: Sheppard, Mullin, Richter & Hampton LLP, 333 S. Hope Street, 48th Floor, Los Angeles, California 90071-1448, (213) 620-1780.

Defendant will supplement its initial disclosures with the subjects of information known by each individual listed by December 28, 2007.

Prior to submitting its initial disclosures, information related to whether individuals employed by a Kelly client, such as Managed Health Care, had relevant information regarding the issue of when Plaintiff's employment with *Kelly* ended was not reasonably available to Kelly. Therefore, at the time of submitting its initial disclosures Kelly was not in possession of the names of any individuals employed by a Kelly client who had information relevant to Kelly's defenses. Hence, no information was included in Kelly's initial disclosures. Kelly will complete its investigation prior to December 28, 2007 and will supplement its initial disclosures if it feels it is appropriate to do so at that time.

Please contact me at your earliest convenience to discuss the above issues.

Sincerely,

Geoffrey D. DeBoskey

for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

W02-WEST:1LDT1\400607005.1

Valerie L. Sharpe, Esq.
December 14, 2007
Page 3


cc:     Derek R. Havel

EXHIBIT G

1    they have HR positions online.  And so I knew there were

2    HR positions out there, but I just -- if she had said

3    they don't come through her office, then I need to

4    pursue that through other offices.

5        Q.   Which is -- may have been why you went to the          12:38

6    Oakland and the San Francisco offices?

7        A.   Right.  Because it was up to me to find

8    employment since, you know, nothing was happening.

9        Q.   At the end of your assignment with Health Net

10   eCommerce, did anyone from Kelly Services tell you that      12:39

11   your employment was terminated?

12       A.   Not that I recall.

13       Q.   Did you -- have you at any time received any

14   information from Kelly Services telling you that your

15   employment was terminated?                                    12:39

16       A.   When I called the payroll 800 number and spoke

17   to someone there, I inquired about my final paycheck.  I

     was told I was still employed by Kelly Services,

     regardless of the fact that I was laid off due to lack

     of work.                                                      12:39

         Q.   Okay.

              My question is:  Were you ever told by anyone

     at Kelly Services at any time after your first

     assignment ended that your employment was terminated?

         A.   No.                                                  12:39

1          Q.   Did you ever tell anyone at Kelly Services that

2     you were quitting?

3          A.   Did I tell anyone?

4               I never -- I didn't quit.  I was laid off due

5     to lack of work.                                              12:40

6          Q.   You never -- so the answer is no, you never

7     told anyone that you were quitting, correct?

8          A.   Kelly Services?

9          Q.   Right.

10         A.   No, I did not quit Kelly Services.  I was laid    12:40

11    off due to lack of work.

12         Q.   And you are referring to your assignment ending

13    at Health Net eCommerce, correct?

14         A.   Yes.

15         Q.   But other than your assignment ending at Health   12:40.

16    Net eCommerce, you never told anyone you were quitting

17    or didn't want to work anymore at Kelly Services?

18         A.   I never said that.  I never sent a letter.  I

19    never made that statement.

20         Q.   I'm going to take you through some documents      12:41

21    that might help refresh your memory on things that

22    happened after that first assignment.  We've talked

23    about a little -- some of these, I think.

24              MR. HAVEL:  The first document I'm going to

25    mark as Exhibit 6.  This is a one-page document Bates      12:41

1    stamped Kelly 0042.

2              (Whereupon, Exhibit 6 was marked for

3              identification.)

4              (Witness reviews document.)

5              BY MR. HAVEL:                                    12:42

6        Q.    I think you've referred to this conversation

7    where someone from Kelly Services informed you that you

8    were not laid off or not terminated; is that right?

9        A.    What's the question?

10       Q.    Well, my question was just trying to give you a    12:42

11   reference point.

12            You've previously testified to a conversation

13   with someone on the phone at Kelly where they told you

14   that you were not terminated from Kelly, correct?

15       A.    Correct.                                         12:42

16       Q.    Okay.

17            This document, in the resolution, notes -- it

18   indicates it's from August 15th, 2006.  It says:

19            "KE called and spoke with a lot

20        of intensity, threatening to take Kelly to          12:43

21        the Labor Commissioner as she was laid off

22        and has not received her paycheck."

23            Do you remember telling someone on the phone on

24   or about August 15th of '06 that you were going to take

25   Kelly to the Labor Commissioner?                          12:43

1          A.    You mean KE?  Who is KE?

2          Q.    My question is do you remember -- KE, I

3     believe, refers to Kelly employee.

4          A.    Oh, okay.

5          Q.    So I'm asking if you remember telling someone          12:43

6     on the phone that you were planning to take Kelly to the

7     Labor Commissioner because you hadn't received your

8     paycheck.

9          A.    That is the end of the conversation.  They did

10    not record the beginning of the conversation.          12:43

11          At the end of the conversation I stated that

12    they owed me my final paycheck on my last day of

13    employment, as I was laid off due to lack of work, in

14    accordance with Labor Code section 201 through 202.

15          And they said, "Well, we don't follow those          12:44

16    laws.  We do things here differently.  And as far as we

17    are concerned, you're still employed, even though you

18    don't have any work."

19          And I said, "Well, you're in violation of the

20    Labor Code and you need to pay me my final check now.          12:44

21    Or, if you don't want to pay me my final paycheck, then

22    pay late penalties up until the day it takes you to get

23    my paycheck to me, which would be Friday."  So that

24    would mean Saturday, Sunday, Monday, Tuesday, Wednesday,

25    Thursday, Friday.          12:44

1          And they said they did not consider me laid

2     off.

3          Q.    The person -- this is someone -- do you

4     remember the --

5          A.    It was a guy.                                    12:45

6          Q.    Does this refresh --

7          A.    It was a guy.

8          Q.    -- your recollection as to whether it was

9     someone named Masri?

10         A.    I have no idea who it was.  I don't think they   12:45

11    give names.  It was a guy.

12         Q.    And did he explain at some point that you were

13    not terminated from Kelly and that you would get your

14    paycheck on Friday?

15         A.    They explained that.  And my question was to     12:45

16    them that -- the discussion was, I said, "Yes, I was.  I

17    am not a Kelly employee anymore due to lack of work.  I

18    am laid off due to lack of work.  There's no more work.

19    Therefore, I am terminated and I need my paycheck on the

20    last day."                                                  12:45

21         Q.    Did he say anything else in response?

22         A.    He said, "No, we don't" -- he just said

23    basically, "This is how we do it, regardless of the

24    Labor Code.  And that's how we -- and because you get

25    paid within seven days, basically we don't have to         12:45

1    follow the Labor Code."

2        Q.   Did he talk to you about the fact that you were

3    now available to go on other assignments?

4        A.   No, absolutely not.  No.  This was just an

5    issue of payment and the discussion of laid-off    12:46

6    termination versus continued active employment.

7        Q.   Did you yell?  It says you yelled and hung up.

8    Did you yell?

9        A.   That's his interpretation.

10       Q.   I'm asking you.

11       A.   And he also said I threatened.  I think that    12:46

12   that's his interpretation because of the content of the

13   matter.

14           Regardless of -- I don't recall yelling.

15   That's his interpretation.  Regardless of whether or not

16   I did that, the issue here was not resolved.    12:46

17       Q.   Did -- you had raised your voice?

18       A.   I don't recall.

19       Q.   Had you spoken to an attorney at this point in

20   time --

21       A.   No.    12:47

22       Q.   -- about this issue?

23       A.   No.

24       Q.   So you were just going based on the fact that

25   you knew from prior employers that when it is your last    12:47

Abrams, Mah & Kahn

117

1    day of employment, you're supposed to get your final

2    paycheck on your last day of work?

3        A.    Well, actually, I had just gone through a

4    couple of instances with Julius Schillinger on this

5    issue.  And basically he taught me how to handle final    12:47

6    terminations.

7        Q.    And he told you that you should pay people on

8    the last day of their work if they are getting

9    terminated?

10       A.    We had a supervisor contact us -- both of us --    12:47

11   and told us that a few Fridays prior, maybe three or

12   four prior to my last day of my employment, that an

13   employee quit and it was effective that day.

14            And Julius worked with me on that and explained

15   to the supervisor -- or had me write to the supervisor    12:48

16   stating that because the supervisor did not contact us

17   and let us know the employee was resigning, even though

18   the employee gave us two weeks' notice in writing, that

19   we would have to pay late penalties based on a calendar

     month.                                                     12:48

              So he told the supervisor that we would -- that

     MHN would have to pay every calendar day it took for the

     employer, which was MHN, to pay the employee.  And we

     figured it was going to take us until Tuesday.  And we

     had to run the payroll.  I had to contact the payroll      12:48

1    department.  And that the manager would have to have the

2    penalties taken out of -- I think it was her budget or

3    his budget.

4         So that's -- and we actually, you know, looked

5    at the -- I think it was the -- the -- some kind of a          12:48

6    book that has -- you know, states how this rolls out.

7    What was the book?  It was one of the typical labor law

8    books.

9         And so it was very clear in my mind when I was

10   laid off from Kelly Services what the procedure was and     12:49

11   what the laws are.

12   Q.   I am just trying to get a sense of your

13   understanding, though.  Because you -- at this point,

14   you didn't have another assignment lined up through

15   Kelly, correct?                                               12:49

16   A.   I didn't.  No, I did not.

17   Q.   You did not.

18        If you had had another assignment lined up with

19   Kelly and you were about to start that, would that have

20   changed your position?                                        12:49

21   A.   If there was work available on Monday, the 14th

22   of August 2006, there would have been no need to issue

23   me a final paycheck on August 11th, 2006 --

24   Q.   Okay.

25   A.   -- because there was work -- there would be             12:50

**EXHIBIT H**



"Working through Kelly is ideal for me. While retired, I like to remain active, and employment with Kelly enables me to have the time and funds to pursue the joy of my life—*traveling*."

**Betty Barker**
**Kelly Employee**

## WORKPLACE VIOLENCE POLICY.

It is the policy of Kelly Services that threats, threatening behaviors, or acts of violence against Kelly employees, customers, visitors, guests, or other individuals while on Kelly's or its customers' premises, in connection with employment with Kelly, are not tolerated.

Those who violate this policy will be terminated from employment with Kelly and may be subject to prosecution.

You are responsible for promptly reporting to your Kelly representative any inappropriate, alarming, threatening, or violent behaviors in which you have been involved, witnessed, or learned of having occurred, regardless of the nature of the relationship between those involved.

If you have obtained or applied for a protective or restraining order that lists Kelly or its customer's premises as protected areas, you must notify your Kelly representative.

### Further Assistance

If you need help, follow these steps:

- When an immediate threat to your safety or the safety of others may exist, contact law enforcement, then inform your Kelly office.

- In the event of a medical emergency, seek first-aid or medical assistance.

- Contact your Kelly office. After hours, contact the Kelly Services Corporate Security and Safety department at **248-244-4250**.

**Note:** All employees can be assured of confidentiality when reporting an incident to a Kelly office or to the Corporate Security and Safety department.

## PAY POLICY

Kelly is committed to paying our employees timely, accurately, and in compliance with all state and federal laws, including, when applicable, the overtime pay requirements and salary pay requirements of the Fair Labor Standards Act (FLSA). Employees exempt from overtime will be notified.

Contact your Kelly representative to report pay-related errors or if you are asked to report inaccurate hours. Kelly will not tolerate retaliation against any employee for reporting pay-related incidents or errors.

A complete copy of Kelly's Pay Policy, including a list of FLSA permissible salary deductions, can be accessed at **myKelly.com**.

## ADDITIONAL POLICIES.

Kelly Services complies with federal and state legislation as it pertains to the Family Medical Leave Act (FMLA), the Immigration Reform and Control Act of 1986, and the Americans with Disabilities Act (ADA). Please see your Kelly representative if you need further information about these policies.

11

# EXHIBIT I

BEFORE THE
CALIFORNIA UNEMPLOYMENT INSURANCE APPEALS BOARD

In the Matter of:

DEBORAH HARRINGTON
(Claimant)

PRECEDENT
DISABILITY DECISION
NO. P-D-469
Case No. D-89-340

S.S.A. No.


KELLY SERVICES
(Self-Insurer)
c/o Voluntary Plan Administrator


Voluntary Plan No.


EMPLOYMENT DEVELOPMENT DEPARTMENT


Office of Appeals No. S-DC-15757


The voluntary plan insurer appealed from the decision of the
administrative law judge which reversed the voluntary plan's
denial of coverage and held that the voluntary plan was liable
for the payment of benefits.  The case is before the Appeals
Board for review under section 2712 of the Unemployment Insurance
Code.

STATEMENT OF FACTS

The employer contracts with various businesses to provide
temporary help.  The claimant registered with the employer in
May 1987 to do light industrial and production work.  After a
couple of short assignments, she was put on a long-term job
beginning in February 1988 and lasting approximately one year.
Thereafter, she was called to work by the employer in June 1989
and put on a short-term production job which was completed on
June 28, 1989.

The claimant performed no work for the above employer or for any
other employer thereafter.  On July 6, 1989, the claimant
suffered a fall and broke her leg.  Screws were surgically
inserted and repair of ligament damage was accomplished on
July 18, 1989.  As of the date of hearing, the claimant still was
wearing a cast up to her knee, and screws had not yet been
removed from the broken bone.

210

P-D-469

## CONCURRING AND DISSENTING OPINION

I respectfully disagree with portions of the conclusion my colleagues have drawn from the facts in this case.

I dissented in Precedent Decision P-D-455, a case issued by the Board on May 7, 1987. I think that the general reasoning in that dissent remains sound, and I express that dissenting opinion once again.

I observe further that in the matter now before the Board both the claimant and the temporary services agency contemplated the continuation of the employment relationship. The claimant acknowledged in her testimony that after her last day of work on June 28, 1989 she expected either to call the employer, or to be called, about other work. When the employer learned that she had been injured eight days later on July 6, her employment file was held out pending her recovery from her injuries; the employer did not treat her inability to work as a separation from employment. Thus the continuation of the employment relationship in this context is consistent with the realities of the marketplace.

Voluntary plan employers have a responsibility to their ongoing workers, and they cannot avoid it just because of the fortuitous timing of a disabling accident or illness. Both the claimant and the employer in this case thought she still had a job. For policy reasons I would therefore hold that the voluntary plan should remain on this risk.

I do however support that position of my colleagues' decision which reaffirmed the Board's vested authority to designate selected decisions as precedents and to have those precedents followed and enforced by the Department.

LORETTA A. WALKER

-1-

P-D-469

The claimant was called by the above employer for another
assignment on July 7, the day after she suffered the fracture,
but told them she could not work because of the injury.  The
employer has placed her file in abeyance until the claimant
notifies the employer that she has been released by her doctor
to return to work.

The voluntary plan provides for termination of coverage when the
employer/employee relationship ends.  It contends that the
relationship ended in the present case on June 28 when the
claimant's assignment was completed.  The voluntary plan also
provides that coverage will end on the 15th day after a layoff or
a leave of absence without pay.  The insurer insists that the
claimant was not on a layoff from the employer and was not on a
leave of absence.  A layoff is not defined in the voluntary
plan.

On March 17, 1989 the Department adopted emergency regulation,
Title 22 California Code of Regulations, section 3254-3.  The
employer insists that the regulation is not valid and therefore
cannot control.

REASONS FOR DECISION

Section 2626 of the Unemployment Insurance Code provides that an
individual shall be deemed disabled in any day in which, because
of his physical or mental condition, he is unable to perform his
regular or customary work.

Sections 3251 and 3254 of the code provide that an employer may
provide disability benefit coverage for its employees by way of
a voluntary plan provided that the rights afforded to the
covered employees are greater than those provided under the
state disability plan.

Section 3253 of the code provides that an individual shall not
be entitled to benefits from the state disability fund for a
disability which commenced while the claimant is covered by a
voluntary plan.

Section 3263 of the code provides that an employee who has
ceased to be covered by an approved voluntary plan shall, if
otherwise eligible, become entitled to benefits from the state
disability fund.

Section 2712 of the code provides that whenever an individual is
entitled to disability benefits but there is a dispute whether
such benefits are payable from the state disability fund or from
one or another voluntary plan, benefits shall be paid to the
individual, pursuant to authorized regulations, from the source
against which his claim was first filed, at not less than the

-2-

P-D-469

state disability fund rate, pending the determination of the dispute.  The Appeals Board may prescribe by regulation the time, manner, method, and procedure through which such disputes may be determined by administrative law judges and the Appeals Board.  If it is finally determined that the benefits should have been paid from one of said sources other than the one which paid the benefits, reimbursement shall be promptly made from the state disability fund or the voluntary plan, as the case may be, and the claimant shall be promptly paid the accumulated excess, if any, to which he is entitled.  Reimbursement shall also be made to the extent of actual liability for benefits from one to another of the above-mentioned sources when it is determined that benefits have been paid in error from one source which should have been paid from another.

In the present case, the voluntary plan insurer contends it is not responsible for coverage of the claimant's disability claim because its employment relationship with the claimant terminated on June 28, 1989 when the claimant completed her last assignment. Therefore, pursuant to provisions of the voluntary plan, coverage terminated on that date and prior to the commencement of the claimant's disability on July 6, 1989.  We agree.

In Precedent Decision P-D-455, this Board held that the employment relationship between a temporary employment agency and its temporary on-call employees terminates when such an employee is laid off upon completion of an assignment and has no definite recall date.  We noted that the termination of coverage provision in the voluntary plan of disability insurance in that case, which is identical to the one in this case, was drawn verbatim from section 3254-2 of Title 22, Code of Regulations, as it existed prior to March 17, 1989.

Effective March 17, 1989, the termination provisions of sections 3254-2 of Title 22, Code of Regulations, were deleted and incorporated in a new section 3254-3.  That section now provides in pertinent part:

>    "(a) Coverage under a voluntary plan may be terminated
>    prior to commencement of a period of disability by any
>    one of the following conditions."

* * *

>    "(5) Termination of the employer-employee relationship.
>    Except when subdivision (b) of this section applies,
>    'termination of the employer-employee relationship'
>    means that employment ceases with no mutual expectation
>    or intention to continue the working relationship.
>    Reasons for termination of the employer-employee
>    relationship include, but are not limited to,
>    separation, dismissal, resignation, and retirement."

-3-

P-D-469

\* \* \*

"(6) Leave of absence without pay or a layoff without
pay if the leave or layoff extends for a period of more
than fifteen (15) full days before the period of
disability commences.  Except when subdivision (b) of
this section applies, 'leave of absence' and 'layoff'
mean that something other than a permanent termination
of the employment relationship is indicated at the time
an individual's work comes to an end, or the employment
ceases because of factors beyond the employee's or the
employer's control.  A leave of absence from work is
granted by the employer for many reasons.  Reasons for a
layoff include, but are not limited to, the following:

(A) Temporary disciplinary action.

(B) Lack of work.  The term 'lack of work' indicates
    termination of employment because the commodity or
    activity provided by the business is no longer in
    sufficient demand to require the services of the
    individual, however the individual would be subject to
    recall if more work developed;  or because an on-call
    employee who accepts temporary assignments is laid off
    at the completion of an assignment with the expectation
    that another assignment will be provided in the future."

\* \* \*

"EXAMPLE 3, Layoff on On-Call Employee.  C works through
a temporary employment agency.  For the past two years C
has been working 'pretty steady' on assignments provided
by this agency.  There have been periods of employment
and indefinite periods of unemployment.  C completes an
assignment and is laid off without pay until such time as
another assignment may be available.  On the fifteenth
day following the last day of work C is severely injured
in a motorcycle accident and files a disability claim
with the voluntary plan.

"A day is defined in Section 125-1 of these regulations
as the 24-hour period beginning at midnight and ending
the following midnight.  Therefore, a disability which
occurs on the 15th day after leaving work is not one
that occurred more than 15 full days after the last day
worked.  Disability benefits are payable under the
voluntary plan."

In its final statement of reasons issued pursuant to the
regulatory adoption process, the Department stated its purpose
in issuing the new regulation.  The Department cited P-D-455 and
then stated:

-4-

P-D-469

"The inclusion in this regulation of the Department's
specific definitions for 'termination of the employer-
employee relationship' and 'layoff without pay' will
restore the Department's intent that all employees
covered by a voluntary plan who are laid off without
pay retain coverage under the voluntary plan for a
period of fourteen days... ."

It is clear that the new section 3254-3 of Title 22, Code of
Regulations, was issued in part to overturn the decision in
Precedent Decision P-D-455.  The question is whether or not it
does so.

The law provides that this Board is an autonomous body which
provides for the impartial and independent review of appeals and
petitions taken from actions by the Employment Development
Department (code sections 401 et seq., 1221 et seq., 1328, and
others).

The Board is vested with the authority to designate certain of
its decisions as precedents (code section 409).  The Director
of the Employment Development Department is controlled by the
Board's precedents except as modified by judicial review
(code section 409).  Sections 409.2 and 410 of the code pro-
vide the exclusive means by which a precedent decision may be
reviewed.

Voluntary plans for the payment of disability benefits are
subject to approval by the Employment Development Department
(code sections 3251 et seq.).

Sections 305 and 306 of the code provide the Department may
adopt, amend, or repeal regulations as are reasonably necessary
to enforce its functions.  We do not question the Department's
authority in this regard.  This general authority cannot, however,
be used as a vehicle to overcome the specific and exclusive means
of relief from precedent decisions of this Board as found in
section 409.  It is a well-established principle of law that the
rule-making power granted to an agency may not be so exercised
as to alter or amend a statute or enlarge or impair its scope
(Whitcomb Hotel v. California Employment Commission (1944),
24 Cal. 2d 753; First Industrial Loan Co. v. Daugherty (1945),
26 Cal. 2d 545; Morris v. Williams (1967), 67 Cal. 2d 733).
However, it appears that is precisely what the Department has
attempted here by using sections 305 and 306 directly to over-
come a precedent decision of this Board and thereby defeat
the strictures of section 409.

-5-

Accordingly, we hold that section 3254-3 of Title 22, Code of Regulations, is invalid insofar as it is inconsistent with Precedent Decision P-D-455.

As in Precedent Decision P-D-455, the claimant in this case was employed by a temporary employment agency. Her temporary assignment was terminated by the employer's client on June 28, 1989, and the claimant had no other assignment immediately available. Therefore, the employment relationship terminated on June 28, 1989, before the commencement of the claimant's disability on July 6, 1989. Accordingly, the Voluntary Plan is not liable for coverage of the period of disability beginning on the latter date.

<u>DECISION</u>

The decision of the administrative law judge is reversed. The voluntary plan is not liable for coverage of the claim for disability benefits. The state disability fund is liable for the payment of benefits under section 2712 of the code.

Sacramento, California, May 10, 1990.

CALIFORNIA UNEMPLOYMENT INSURANCE APPEALS BOARD

ROBERT L. HARVEY, CHAIRMAN

GEORGE E. MEESE

J. RICHARD GLADE

DEBRA A. BERG

JAMES S. STOCKDALE

CHARLES W. WARD


LORETTA A. WALKER
Concurring and Dissenting
Separate Opinion Attached

EXHIBIT J

## Francheska Machado

**From:** Lauren Thibodeaux [LThibodeaux@sheppardmullin.com]
**Sent:** Monday, January 14, 2008 9:36 AM
**To:** Valerie Sharpe
**Subject:** Sullivan v. Kelly
**Attachments:** 400660998_2.DOC

Hi Valerie,
Attached is the stipulation with the additional language included. Please let me know if it's agreeable to you.


<<400660998_2.DOC¤>>
Thank you,
Lauren Thibodeaux

Sheppard, Mullin, Richter & Hampton
333 S. Hope Street
48th Floor
Los Angeles, CA 90071
Office: 213-617-5582
Fax: 213-443-2807



333 South Hope Street
48th Floor
Los Angeles, CA 90071-1448
213.620.1780 *office*
213.620.1398 *fax*
**www.sheppardmullin.com**

**Lauren Thibodeaux**
213.617.5582 *direct* | 213.443.2807 *direct fax*
LThibodeaux@sheppardmullin.com | *Bio*


This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

**Sheppard, Mullin, Richter & Hampton LLP**

Please visit our website at www.sheppardmullin.com

ERIC A. GROVER (SBN 136080)
eagrover@kellergrover.com
VALERIE L. SHARPE (Of Counsel) (SBN 191344)
vsharpe@kellergrover.com
**KELLER GROVER LLP**
425 Second St., Suite 500
San Francisco, CA 94107
Telephone: (415) 543-1305
Fax: (415) 543-7861


Attorneys for Plaintiff
CATHERINE SULLIVAN



# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHERINE SULLIVAN, on behalf of herself and all others similarly situated, | Case No.: CV 07-02784 CW |
| Plaintiff, | <u>CLASS ACTION</u> |
| v. | **STIPULATION AND [PROPOSED] ORDER TO EXTEND CERTAIN CASE DEADLINES SET BY CASE MANAGEMENT ORDER** |
| KELLY SERVICES, INC., and DOES 1 through 10 inclusive, | |
| Defendants. | |

-1-

The parties, through their respective counsel, hereby stipulate as follows, and mutually request the Court to approve this Stipulation and enter its Order accordingly:

## **STIPULATION**

WHEREAS Plaintiff filed the Complaint herein on April 20, 2007 and subsequently filed a First Amended Complaint on July 27, 2007, and Defendant appeared and answered when it removed the case to this Court;

WHEREAS an initial case management conference was held on September 11, 2007;

WHEREAS at the initial case management conference the Court set a deadline of February 22, 2008 for the cut off of class certification discovery and a deadline of May 22, 2008 for the filing of a motion for class certification;

WHEREAS the parties have exchanged initial disclosures and engaged in formal discovery such as requesting and producing documents, propounding interrogatories, noticing depositions of persons most knowledgeable, and appearing for Plaintiff's deposition;

WHEREAS although Defendant has worked diligently to provide discovery responses, meet and confer over the discovery response, and provide supplemental responses, such efforts have taken longer than anticipated by the parties;

WHEREAS the parties have been working cooperatively to keep the process of discovery moving along;

-2-

STIPULATION AND [PROPOSED] ORDER TO
EXTENDING CERTAIN CASE DEADLINES
CASE NO. CV-07-02784 CW

1    WHEREAS despite the parties best efforts to comply with the deadlines set

2  by the initial case management order, the parties need additional time to adequately

3  complete class certification discovery and need to extend the deadline for Plaintiff to file

4  her motion for class certification;

5

6    WHEREAS Defendant intends to seek an order of Summary Judgment,

7  pursuant to Federal Rule of Civil Procedure, Rule 56 on the First Amended Complaint filed

8  by Plaintiff;

9

10    WHEREAS the parties have mutually agreed to extend the deadline for

11  completing class certification discovery and the deadline for filing Plaintiff's motion for

12  class certification;

13

14    THEREFORE, the parties request that the Court set a date for hearing

15  Defendant's motion for summary judgment on or after April 24, 2008.  The parties further

16  stipulate that the deadline for completing class certification discovery currently scheduled

17  for February 22, 2008 should be continued until May 22, 2008; the deadline to file

18  Plaintiff's motion for class certification currently set for May 22, 2008 should be continued

19  until June 22, 2008; and the hearing date for Plaintiff's class certification motion currently

20  set for June 26, 2008 should be continued to July 31, 2008, all to allow the parties to

21  adequately complete discovery.

22

23

24

25

26

27

28

-3-

STIPULATION AND [PROPOSED] ORDER TO
EXTENDING CERTAIN CASE DEADLINES
CASE NO. CV-07-02784 CW

1

2   Dated: January ___, 2008          **KELLER GROVER LLP**

3

4                                    By: _____
                                        ERIC A. GROVER
5                                       Attorneys for Plaintiff
                                        Catherine Sullivan
6

7

    Dated: January ___, 2008          **SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
8

9

10                                   By: _____
                                        DEREK HAVEL
11                                      GEOFFREY D. DEBOSKEY
                                        LAUREN D. THIBODEAUX
12                                      Attorneys for Defendant
                                        Kelly Services, Inc.
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-4-

STIPULATION AND [PROPOSED] ORDER TO
                                           EXTENDING CERTAIN CASE DEADLINES
                                           CASE NO. CV-07-02784 CW

1

## **ORDER**

2

Good cause appearing, IT IS HEREBY ORDERED THAT the deadline for

3

completing class certification discovery currently scheduled for February 22, 2008 is continued

4

until May 22, 2008; the deadline to file Plaintiff's motion for class certification currently set for

5

May 22, 2008 is continued until June 22, 2008; and the hearing date for Plaintiff's class

6

certification motion currently set for June 26, 2008 is continued to July 31, 2008.

7

8

Date: _____          _____

9
                                        CLAUDIA WILKEN
10                                      United States District Court Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-1-

EXHIBIT K



1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
2    Including Professional Corporations
   RICHARD J. SIMMONS, Cal. Bar No. 72666
3  DEREK R. HAVEL, Cal. Bar No. 193464
   GEOFFREY D. DEBOSKEY, Cal. Bar No. 211557
4  LAUREN D. THIBODEAUX, Cal. Bar No. 239997
   333 South Hope Street, 48th Floor
5  Los Angeles, California 90071-1448
   Telephone:   213-620-1780
6  Facsimile:   213-620-1398
   rsimmons@sheppardmullin.com
7  dhavel@sheppardmullin.com
   gdeboskey@sheppardmullin.com
8  lthibodeaux@sheppardmullin.com

9  Attorneys for Defendant KELLY SERVICES,
   INC.

10

11

12              SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                    FOR THE COUNTY OF ALAMEDA

14

15  CATHERINE E. SULLIVAN, on behalf of       Case No. RG 07321759
    herself and all others similarly situated,
16                                            DEFENDANT KELLY SERVICES,
                                              INC.'S ANSWER TO PLAINTIFF'S
17  Plaintiff,                                UNVERIFIED COMPLAINT

18  v.                                        [Compliant Filed April 20, 2007]

19  KELLY SERVICES, INC., and DOES 1 to       Trial Date:  None Set
    10, inclusive,,
20  Defendants.                                                   BY FAX

21

22

23          Kelly Services, Inc. ("Defendant"), for itself and no other defendants, hereby

24  answers plaintiff Catherine E. Sullivan's unverified Complaint ("Complaint") as follows:

25

26

27

28
                                       -1-

FILED
ALAMEDA COUNTY
MAY 2 4 2007
CLERK OF THE SUPERIOR COURT
By _____
                        Deputy

## GENERAL DENIAL

Pursuant to the provisions of California Code of Civil Procedure Section 431.30, Defendant denies generally and specifically, conjunctively and disjunctively, each and every allegation of the Complaint, and denies Plaintiff is entitled to any relief whatsoever as against Defendant.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

(Failure to State a Cause of Action)

1.    Neither the Complaint, nor any purported cause of action alleged therein, state facts sufficient to constitute a cause of action upon which relief can be granted against Defendant.

## SECOND AFFIRMATIVE DEFENSE

(Statute of Limitations)

2.    The Complaint and each purported cause of action alleged therein are barred, in whole or in part, by the applicable statutes of limitations, including but not limited to California Labor Code Section 203; California Code of Civil Procedure Sections 337, 338, 339, 340, and 343; and California Business and Professions Code Section 17208.

## THIRD AFFIRMATIVE DEFENSE

(Laches)

3.    Defendant is informed and believes, and based upon such information and belief alleges, that the Complaint and each purported cause of action alleged therein, are barred, in whole or in part, by the equitable doctrine of laches.

-2-

## FOURTH AFFIRMATIVE DEFENSE

### (Estoppel)

4.    Defendant is informed and believes, and based upon such information and belief alleges, that Plaintiff is estopped by her conduct from asserting the claims upon which she seeks relief.

## FIFTH AFFIRMATIVE DEFENSE

### (Waiver)

5.    Defendant is informed and believes, and based upon such information and belief alleges, that the Complaint and each purported cause of action alleged therein are barred by the doctrine of waiver.

## SIXTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

6.    Defendant is informed and believes, and based upon such information and belief alleges, that Plaintiff has or had unclean hands with respect to the matters alleged in the Complaint and is, therefore, barred from recovering any relief on the Complaint or any purported cause of action alleged therein.

## SEVENTH AFFIRMATIVE DEFENSE

### (Failure to Exhaust Administrative Remedies)

7.    Plaintiff's Complaint, and each purported cause of action alleged therein, is barred because Plaintiff failed to exhaust her administrative remedies under the appropriate statutory provisions, including but not limited to Labor Code sections 2699 et seq.

### EIGHTH AFFIRMATIVE DEFENSE

(Primary Jurisdiction Doctrine)

8.    The Complaint, and each purported cause of action therein, should be abated in the Court's discretion, and Plaintiff must pursue her administrative remedies under the appropriate statutory provisions, including but not limited to Labor Code sections 2699 et seq., with the California Division of Labor Standards Enforcement, which has primary jurisdiction over Plaintiff's claims.

### NINTH AFFIRMATIVE DEFENSE

(Lack of Standing)

9.    Plaintiff lacks standing to assert the Complaint or any purported cause of action alleged therein.

### TENTH AFFIRMATIVE DEFENSE

(Non-Certifiable Class)

10.    Defendant is informed and believes, and based upon such information and belief alleges, that the Complaint does not state facts sufficient to certify a class pursuant to California Code of Civil Procedure Section 382.  Accordingly, this action is not properly brought as a class action.

### ELEVENTH AFFIRMATIVE DEFENSE

(No Common Issues)

11.    Defendant is informed and believes, and based upon such information and belief alleges, that there is a lack of common issues of fact or law.  Accordingly, this action is not properly brought as a class action.

## TWELFTH AFFIRMATIVE DEFENSE

### (Inadequacy of Class Representative)

12.    Defendant is informed and believes, and based upon such information and belief alleges, that Plaintiff is an inadequate representative of the class she purports to represent.  Accordingly, this action is not properly brought as a class action.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Lack of Typicality)

13.    Defendant is informed and believes, and based upon such information and belief alleges, that Plaintiff's claims are not typical of the class she purports to represent.  Accordingly, this action is not properly brought as a class action.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Inadequacy of Plaintiff's Counsel)

14.    Defendant is informed and believes, and based upon such information and belief alleges, that Plaintiff's counsel is not adequately familiar with the substantive and procedural law pertinent to class actions.  Accordingly, this action is not properly brought as a class action.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Lack of Numerosity)

15.    Defendant is informed and believes, and based upon such information and belief alleges, that the purported class is not sufficiently numerous.  Accordingly, this action is not properly brought as a class action.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Lack of Superiority)

16.     Defendant is informed and believes, and based upon such information and belief alleges, that the class action procedure is not the superior method for adjudicating Plaintiff's claims or the claims of the alleged class.  Accordingly, this action is not properly brought as a class action.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Lack of Specificity)

17.     Plaintiff's second cause of action claiming unfair competition in violation of California Business and Professions Code Sections 17200, et seq., is barred because it fails to plead specific facts capable of stating a claim for unfair competition.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Justification And Privilege)

18.     Defendant cannot be liable for any alleged violation of California Business and Professions Code Sections 17200, et seq. or any other alleged cause of action alleged in the Complaint because its actions, conduct and dealings with its employees were lawful, and were carried out in good faith for legitimate business purposes.

## NINETEENTH AFFIRMATIVE DEFENSE

### (No Willful Failure to Pay)

19.     Neither Plaintiff nor any of the persons on whose behalf Plaintiff purports to sue can recover waiting time penalties because any alleged failure to pay wages was based on a good faith dispute regarding the applicable law or facts.

-6-

## TWENTIETH AFFIRMATIVE DEFENSE

### (Good Faith Defense)

20.     At all times relevant, Defendants acted in good faith, with honesty of purpose and without any willful intention to withhold payment.  See Barnhill v. Robert Saunders & Co., 125 Cal. App. 3d 1 (1981); Bothell v. Phase Metrics, Inc., 299 F.3d 1120 (9th Cir. 2002).

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### (Due Process)

21.     Plaintiff's Complaint, to the extent it seeks penalties or restitution on behalf of absent class members or the general public, violates the due process clause as provided in the Fifth and Fourteenth Amendments of the United States Constitution and in the California Constitution.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### (Attorneys' Fees)

22.     As a consequence of Plaintiff's bringing or maintaining this action, Defendant has been required to retain attorneys to defend itself, and Defendant is entitled to recover its attorneys fees incurred herein pursuant to California Labor Code Section 218.5.

## RESERVATION OF RIGHT TO AMEND ANSWER

23.     Defendant hereby gives notice that it intends to rely on such other and further defenses as may become available during discovery in this action and reserves the right to amend its answer to assert any such defenses.

-7-

## PRAYER FOR RELIEF

WHEREFORE, Defendant prays for judgment as follows:

1.    That the Complaint be dismissed in its entirety;

2.    That Plaintiff take nothing by reason of her Complaint and that judgment be rendered in favor of Defendant;

3.    That Defendant be awarded its costs of suit and attorneys' fees incurred in defense of this action; and

4.    For such other and further relief as this court deems just and proper.

Dated:  May 24, 2007

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____

RICHARD J. SIMMONS
DEREK R. HAVEL
GEOFF D. DEBOSKEY
LAUREN D. THIBODEAUX

Attorneys for Defendants
KELLY SERVICES, INC.

-8-

W02-WEST:1LDT1\400319288.1

KELLY SERVICES, INC.'S ANSWER TO PLAINTIFF'S
UNVERIFIED COMPLAINT

## PROOF OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles; I am over the age of eighteen years and not a party to the within entitled action; my business address is 333 South Hope Street, 48th Floor, Los Angeles, California 90071-1448.

On May 24, 2007, I served the following document(s) described as **DEFENDANT KELLY SERVICES, INC.'S ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT** on the interested party(ies) in this action by placing true copies thereof enclosed in sealed envelopes and/or packages addressed as follows:

Eric A. Grover, Esq.              Tel: 415-543-1305
Jade Butman, Esq.                 Fax: 415-543-7861
Keller Grover LLP
425 Second Street, Ste. 500
San Francisco, CA 94107

☒    **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐    **BY OVERNIGHT DELIVERY:** I served such envelope or package to be delivered on the same day to an authorized courier or driver authorized by the overnight service carrier to receive documents, in an envelope or package designated by the overnight service carrier.

☐    **BY FACSIMILE:** I served said document(s) to be transmitted by facsimile pursuant to Rule 2.306 of the California Rules of Court. The telephone number of the sending facsimile machine was 213-620-1398. The name(s) and facsimile machine telephone number(s) of the person(s) served are set forth in the service list. The sending facsimile machine (or the machine used to forward the facsimile) issued a transmission report confirming that the transmission was complete and without error. Pursuant to Rule 2.306(g)(4), a copy of that report is attached to this declaration.

☐    **BY HAND DELIVERY:** I caused such envelope(s) to be delivered by hand to the office of the addressee(s).

☒    **STATE:** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on May 24, 2007, at Los Angeles, California.

Donna J. McCuray