1  ERIC A. GROVER (SBN 136080)
   eagrover@kellergrover.com
2  VALERIE L. SHARPE (Of Counsel) (SBN 191344)
   vsharpe@kellergrover.com
3  **KELLER GROVER LLP**
   425 Second St., Suite 500
4  San Francisco, CA 94107
5  Telephone: (415) 543-1305
   Fax: (415) 543-7861
6

7  Attorneys for Plaintiff
8  CATHERINE SULLIVAN

9  **UNITED STATES DISTRICT COURT**
10 **NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CATHERINE SULLIVAN, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KELLY SERVICES, INC., and DOES 1 through 10 inclusive,<br><br>Defendants. | Case No.: CV 07-02784 CW<br><br>CLASS ACTION<br><br>**DECLARATION OF VALERIE L. SHARPE IN SUPPORT OF PLAINTIFF CATHERINE SULLIVAN'S NOTICE OF MOTION AND MOTION TO MODIFY CASE MANAGEMENT ORDER AND AMEND COMPLAINT**<br><br>[Fed. R. Civ. P. 16(b)(4), 15(a)(2)]<br><br>Date: August 14, 2008<br>Time: 2:00 p.m.<br>Judge: Honorable Claudia Wilken<br>Crtrm: 2, 4th Floor |

Declaration of Valerie L. Sharpe ISO Motion to Modify
Case Management Order and Amend Complaint                    Case No. CV-07-02784 CW

I, VALERIE L. SHARPE, do hereby declare and state as follows:

1. I am an attorney licensed to practice law in the State of California, in the Northern District of California, and in the Ninth Circuit. I am Of Counsel with the law firm Keller Grover LLP, counsel of record for Plaintiff Catherine Sullivan ("Plaintiff") in the above-captioned matter. If called as a witness to testify, I could and would testify as to the following, based on my own personal knowledge.

2. In this action, Plaintiff alleges that she worked for Defendant Kelly Services, Inc. ("Defendant") as a temporary staffing employee, was placed on a temporary assignment by Defendant, and that pursuant to California Labor Code §§ 201 and 202, she was entitled to be paid her final wages on the last day she performed work on that assignment. Plaintiff further alleges that as a result of Defendant's failure to timely pay her final wages, she is entitled to the penalty provided for in Labor Code § 203.

3. During the course of class certification discovery, specifically, in late November or early December 2007, it became apparent that Defendant intends to contest liability on Plaintiff's claims by asserting that it was not obligated to pay Plaintiff her final wages on the last day of her assignment because she was still Defendant's employee on the last day of her assignment. However, Defendant had sent Plaintiff to interview with Defendant's customers and/or potential customers on several occasions after her initial assignment ended and did not pay Plaintiff for the hours she worked attempting to secure business for Defendant during these interviews or reimburse Plaintiff for the expenses she incurred performing this work.

4. At that time, Plaintiff lacked sufficient information to decide whether Defendant's failure to pay Plaintiff for time spent on interviews with Defendant's customers and/or potential customers and failure to reimburse Plaintiff for the expenses she incurred performing this work could support a cognizable claim against Defendant on her own behalf or on behalf of a class. Thus, as of December 31, 2007, the deadline set by the Court for amending the complaint, Plaintiff was uncertain as to whether she had a basis to seek leave from the Court to file an amended complaint.

5.      For that reason, Plaintiff immediately sought discovery from Defendant regarding the policies and procedures governing when, and under what circumstances, Defendant sent its temporary staffing employees on interviews with its customers and potential customers, when, and under what circumstances it paid its temporary staffing employees for work performed in connection with attending those interviews, and when, and under what circumstances, Defendant reimbursed its temporary staffing employees for expenses incurred in the discharge of their duties in connection with attending the interviews with Defendant's customers and potential customers.

6.      On December 20, 2007, Plaintiff served Defendant with her first FED.R.CIV.P. 30(b)(6) deposition notice.  That notice sought, among other things, deposition testimony and documents regarding Defendant's practices, policies, and procedures governing when, and under what circumstances, Defendant sends current and prospective temporary employees on interviews with Defendant's customers and potential customers and when, and under what circumstances, Defendant would pay or not pay a prospective or current temporary employee for time spent on those interviews.

7.      On January 22, 2008, Defendant objected to Plaintiff's request for testimony and documents on these issues.  Defendant produced no responsive documents.  Nor did Defendant provide Plaintiff with any dates for the deposition.

8.      On January 31, 2008, I sent a letter to Defendant's counsel in an effort to meet and confer regarding Defendant's failure to respond substantively to Plaintiff's first 30(b)(6) deposition notice.  In it, I stated that Defendant either could allow discovery on these issues "to move forward and thereafter, [] stipulate to an amendment to the Complaint" or Plaintiff would "either move for leave to amend or . . . file a new putative class action."  Attached as **Exhibit A** is a true and correct copy of that letter.

9.      On February 1, 2008, Defendant's counsel responded to my letter.  Defendant's counsel advised that Defendant planned to produce a witness(es) in response to Plaintiff's deposition notice, but that it was not yet in a position to offer alternative dates for that deposition. Defendant's

2

1 counsel further advised that it would "provide relevant, non-privileged documents" in response to the document requests attached to the notice. Attached as **Exhibit B** is a true and correct copy of that letter.

10. On February 15, 2008, Defendant served its responses to Plaintiff's specially prepared interrogatories. These interrogatories, served by Plaintiff on January 9, 2008, sought information about Defendant's practice of sending temporary employees on interviews with its customers and potential customers. Although Defendant included boilerplate objections to the interrogatories on this topic, Defendant did respond to them.

11. Also in February 2008, Defendant's counsel offered me dates for the deposition noticed by Plaintiff on December 20, 2007. The deposition was scheduled to take place on March 20, 2008. Defendant agreed to produce documents responsive to Plaintiff's document requests in advance of the deposition.

12. On March 12, 2008, the day before Defendant was obligated to produce documents, Defendant's counsel advised me that Defendant was ready to produce responsive documents but that it would not do so until the parties agreed to a protective order. After the parties' counsel met and conferred, Defendant agreed to produce the documents before the March 20, 2008 deposition.

13. At the March 20, 2008 deposition, Defendant's corporate representative testified regarding the policies and procedures governing its practice of sending temporary employees on interviews with its customers and potential customers. However, Defendant's designated corporate representative could testify only as to the policies and procedures that applied to Defendant's commercial divisions. The witness declined to testify as to whether those policies and procedures also applied to Defendant's non-commercial divisions.

14. I met and conferred with Defendant's counsel regarding Defendant's failure to produce a corporate representative who was qualified to testify on behalf of both the commercial and non-commercial divisions. In early April, Defendant agreed to produce another witness who could testify about the policies and procedures governing its practice of sending temporary

3

employees on interviews with its customers and potential customers that applied to Defendant's non-commercial divisions. Despite this agreement, however, Defendant was reticent to provide dates and waited until late April to inform me that the deposition would have to take place in Michigan as that is the location of the witness who would testify regarding the practices of Defendant's non-commercial division. It was not until mid-May that Defendant finally confirmed a date for the deposition. The deposition finally took place on July 2, 2008 in Michigan.

15. On March 20, 2008, Plaintiff served another 30(b)(6) deposition notice seeking deposition testimony regarding the number of temporary staffing employees who had participated in interviews on Defendant's behalf. In lieu of producing a witness in response to this notice, Defendant provided written responses on July 2, 2008. Although Defendant initially declined to produce the information sought by Plaintiff, the parties have met and conferred on the issue and are discussing a method that can both overcome Defendant's burdensome objection and provide Plaintiff with the information she needs to support her motion for class certification.

16. As I obtained discovery from Defendant, I began to analyze whether Plaintiff could state a cognizable class claim against Defendant regarding what appeared to be its practice of not paying temporary employees for work performed in connection with attending interviews with Defendant's customers and potential customers as well as what appeared to be its practice of not reimbursing those employees for expenses incurred in the discharge of their duties in connection with attending the interviews. I also began drafting an amended complaint.

17. On May 13, 2008, I advised Defendant's counsel that Plaintiff intended to amend her complaint. I asked if Defendant would enter into a stipulation permitting Plaintiff to do so, giving Defendant's counsel until May 20, 2008 to respond. Later that day, my assistant sent a draft of the amended complaint to Defendant's counsel via e-mail. Attached as **Exhibit C** is a true and correct copy of that e-mail.

18. When I did not receive a response to my request for a stipulation, I contacted Defendant's counsel again. On May 22, 2008, I received an e-mail from Defendant's counsel. He

4

1  advised that he would be discussing Plaintiff's request for a stipulation on the morning of May 23,
2  2008 and that he would contact me about the proposed amended complaint after that. Attached as
3  **Exhibit D** is a true and correct copy of that e-mail.

4    19.  On May 23, 2008, I received a message from Defendant's counsel in which he
5  advised that Defendant was still considering whether to enter into a stipulation that would allow
6  Plaintiff to amend her complaint.

7    20.  On May 27, 2008, I sent Defendant's counsel an e-mail asking when Plaintiff would
8  receive a definitive response from Defendant. I received no response to this e-mail. **Exhibit D**
9  includes a true and correct copy of that e-mail.

10   21.  On May 30, 2008, I again contacted Defendant's counsel. I sent Defendant's counsel
11 an e-mail noting that I had yet to receive a response to Plaintiff's request for a stipulation concerning
12 the amended complaint. I asked Defendant's counsel to provide Defendant's response by June 2,
13 2008. **Exhibit D** includes a true and correct copy of that e-mail.

14   22.  On May 30, 2008, I received an e-mail from Defendant's counsel. He asked that I
15 provide him with a proposed stipulation and advised that he would "work to provide" me with an
16 answer by noon on June 2, 2008. I did not receive a response from Defendant's counsel on June 2,
17 2008. **Exhibit D** includes a true and correct copy of that e-mail.

18   23.  On June 19, 2008, I sent Defendant's counsel a letter by facsimile and mail attaching
19 a draft stipulation as well as another draft of the proposed amended complaint. I noted that the only
20 change in the proposed amended complaint was the addition of another class representative.
21 Attached as **Exhibit E** is a true and correct copy of this letter.

22   24.  On June 25, 2008, I sent Defendant's counsel another e-mail asking if Defendant
23 intended to agree to a stipulation that would permit Plaintiff to file an amended complaint. I advised
24 him that I needed an answer immediately. Attached as **Exhibit F** is a true and correct copy of that
25 e-mail.

5

Declaration of Valerie L. Sharpe ISO Motion to Modify
Case Management Order and Amend Complaint                                    Case No. CV-07-02784 CW

25. On June 25, 2008, I discussed Plaintiff's requested stipulation with Defendant's counsel. He advised that Defendant would not agree to the stipulation. He followed up with an e-mail. It stated: "To follow-up on my rather abrupt response before, Kelly is unwilling at this time to stipulate to the amended complaint given the new legal theories, the new plaintiff and the fact that we are well past the Court ordered deadline for new claims or parties. As I indicated previously, the fact that we were past the Court ordered deadline was an issue with Kelly, but I believe the addition of the new party also added to the analysis. I'm in the office if you wish to discuss." **Exhibit F** includes a true and correct copy of that e-mail.

26. On June 26, 2008, I sent a letter to Defendant's counsel advising him that Plaintiff intended to file a new complaint on July 2 and invited him to contact me if Defendant changed its position before then. I received no response to this letter. Attached as **Exhibit G** is a true and correct copy of that e-mail.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 10th day of July, 2008 in Oakland, California.

/s/
VALERIE L. SHARPE