1  ERIC A. GROVER (SBN 136080)
   eagrover@kellergrover.com
2  VALERIE L. SHARPE (Of Counsel) (SBN 191344)
   vsharpe@kellergrover.com
3  **KELLER GROVER LLP**
4  425 Second St., Suite 500
   San Francisco, CA 94107
5  Telephone:  (415) 543-1305
   Fax:  (415) 543-7861
6

7
   Attorneys for Plaintiff
8  CATHERINE SULLIVAN

9                **UNITED STATES DISTRICT COURT**

10              **NORTHERN DISTRICT OF CALIFORNIA**

11 CATHERINE SULLIVAN, on behalf of herself       Case No.:  CV 07-02784 CW
   and all others similarly situated,
12                                                 <u>CLASS ACTION</u>
13              Plaintiff,
14        v.                                       **DECLARATION OF VALERIE L.
                                                   SHARPE IN SUPPORT OF PLAINTIFF
15 KELLY SERVICES, INC., and DOES l               CATHERINE SULLIVAN'S NOTICE OF
   through 10 inclusive,                          MOTION AND MOTION TO MODIFY
16                                                 CASE MANAGEMENT ORDER AND
17              Defendants.                        AMEND COMPLAINT**

18                                                 [Fed. R. Civ. P. 16(b)(4), 15(a)(2)]
19
                                                   Date:    August 14, 2008
20                                                 Time:    2:00 p.m.
                                                   Judge:  Honorable Claudia Wilken
21                                                 Crtrm:  2, 4th Floor
22
23
24
25
26
27
28

1    I, VALERIE L. SHARPE, do hereby declare and state as follows:

2    1.    I am an attorney licensed to practice law in the State of California, in the Northern

3    District of California, and in the Ninth Circuit.  I am Of Counsel with the law firm Keller Grover

4    LLP, counsel of record for Plaintiff Catherine Sullivan ("Plaintiff") in the above-captioned matter.

5    If called as a witness to testify, I could and would testify as to the following, based on my own

6    personal knowledge.

7    2.    In this action, Plaintiff alleges that she worked for Defendant Kelly Services, Inc.

8    ("Defendant") as a temporary staffing employee, was placed on a temporary assignment by

9    Defendant, and that pursuant to California Labor Code §§ 201 and 202, she was entitled to be paid

10    her final wages on the last day she performed work on that assignment.  Plaintiff further alleges that

11    as a result of Defendant's failure to timely pay her final wages, she is entitled to the penalty

12    provided for in Labor Code § 203.

13    3.    During the course of class certification discovery, specifically, in late November or

14    early December 2007, it became apparent that Defendant intends to contest liability on Plaintiff's

15    claims by asserting that it was not obligated to pay Plaintiff her final wages on the last day of her

16    assignment because she was still Defendant's employee on the last day of her assignment.  However,

17    Defendant had sent Plaintiff to interview with Defendant's customers and/or potential customers on

18    several occasions after her initial assignment ended and did not pay Plaintiff for the hours she

19    worked attempting to secure business for Defendant during these interviews or reimburse Plaintiff

20    for the expenses she incurred performing this work.

21    4.    At that time, Plaintiff lacked sufficient information to decide whether Defendant's

22    failure to pay Plaintiff for time spent on interviews with Defendant's customers and/or potential

23    customers and failure to reimburse Plaintiff for the expenses she incurred performing this work

24    could support a cognizable claim against Defendant on her own behalf or on behalf of a class.  Thus,

25    as of December 31, 2007, the deadline set by the Court for amending the complaint, Plaintiff was

26    uncertain as to whether she had a basis to seek leave from the Court to file an amended complaint.

27

28
1

Declaration of Valerie L. Sharpe ISO Motion to Modify
Case Management Order and Amend Complaint                    Case No. CV-07-02784 CW

5.      For that reason, Plaintiff immediately sought discovery from Defendant regarding the policies and procedures governing when, and under what circumstances, Defendant sent its temporary staffing employees on interviews with its customers and potential customers, when, and under what circumstances it paid its temporary staffing employees for work performed in connection with attending those interviews, and when, and under what circumstances, Defendant reimbursed its temporary staffing employees for expenses incurred in the discharge of their duties in connection with attending the interviews with Defendant's customers and potential customers.

6.      On December 20, 2007, Plaintiff served Defendant with her first FED.R.CIV.P. 30(b)(6) deposition notice.  That notice sought, among other things, deposition testimony and documents regarding Defendant's practices, policies, and procedures governing when, and under what circumstances, Defendant sends current and prospective temporary employees on interviews with Defendant's customers and potential customers and when, and under what circumstances, Defendant would pay or not pay a prospective or current temporary employee for time spent on those interviews.

7.      On January 22, 2008, Defendant objected to Plaintiff's request for testimony and documents on these issues.  Defendant produced no responsive documents.  Nor did Defendant provide Plaintiff with any dates for the deposition.

8.      On January 31, 2008, I sent a letter to Defendant's counsel in an effort to meet and confer regarding Defendant's failure to respond substantively to Plaintiff's first 30(b)(6) deposition notice.  In it, I stated that Defendant either could allow discovery on these issues "to move forward and thereafter, [] stipulate to an amendment to the Complaint" or Plaintiff would "either move for leave to amend or . . . file a new putative class action."  Attached as **Exhibit A** is a true and correct copy of that letter.

9.      On February 1, 2008, Defendant's counsel responded to my letter.  Defendant's counsel advised that Defendant planned to produce a witness(es) in response to Plaintiff's deposition notice, but that it was not yet in a position to offer alternative dates for that deposition.  Defendant's

2

Declaration of Valerie L. Sharpe ISO Motion to Modify
Case Management Order and Amend Complaint                    Case No. CV-07-02784 CW

1  counsel further advised that it would "provide relevant, non-privileged documents" in response to

2  the document requests attached to the notice.  Attached as **Exhibit B** is a true and correct copy of

3  that letter.

4       10.    On February 15, 2008, Defendant served its responses to Plaintiff's specially

5  prepared interrogatories.  These interrogatories, served by Plaintiff on January 9, 2008, sought

6  information about Defendant's practice of sending temporary employees on interviews with its

7  customers and potential customers.  Although Defendant included boilerplate objections to the

8  interrogatories on this topic, Defendant did respond to them.

9       11.    Also in February 2008, Defendant's counsel offered me dates for the deposition

10  noticed by Plaintiff on December 20, 2007.  The deposition was scheduled to take place on

11  March 20, 2008.  Defendant agreed to produce documents responsive to Plaintiff's document

12  requests in advance of the deposition.

13       12.    On March 12, 2008, the day before Defendant was obligated to produce documents,

14  Defendant's counsel advised me that Defendant was ready to produce responsive documents but that

15  it would not do so until the parties agreed to a protective order.  After the parties' counsel met and

16  conferred, Defendant agreed to produce the documents before the March 20, 2008 deposition.

17       13.    At the March 20, 2008 deposition, Defendant's corporate representative testified

18  regarding the policies and procedures governing its practice of sending temporary employees on

19  interviews with its customers and potential customers.  However, Defendant's designated corporate

20  representative could testify only as to the policies and procedures that applied to Defendant's

21  commercial divisions.  The witness declined to testify as to whether those policies and procedures

22  also applied to Defendant's non-commercial divisions.

23       14.    I met and conferred with Defendant's counsel regarding Defendant's failure to

24  produce a corporate representative who was qualified to testify on behalf of both the commercial

25  and non-commercial divisions.  In early April, Defendant agreed to produce another witness who

26  could testify about the policies and procedures governing its practice of sending temporary

27

28
Declaration of Valerie L. Sharpe ISO Motion to Modify
Case Management Order and Amend Complaint           Case No. CV-07-02784 CW

1    employees on interviews with its customers and potential customers that applied to Defendant's

2    non-commercial divisions.  Despite this agreement, however, Defendant was reticent to provide

3    dates and waited until late April to inform me that the deposition would have to take place in

4    Michigan as that is the location of the witness who would testify regarding the practices of

5    Defendant's non-commercial division.  It was not until mid-May that Defendant finally confirmed a

6    date for the deposition.   The deposition finally took place on July 2, 2008 in Michigan.

7        15.    On March 20, 2008, Plaintiff served another 30(b)(6) deposition notice seeking

8    deposition testimony regarding the number of temporary staffing employees who had participated in

9    interviews on Defendant's behalf.   In lieu of producing a witness in response to this notice,

10   Defendant provided written responses on July 2, 2008.  Although Defendant initially declined to

11   produce the information sought by Plaintiff, the parties have met and conferred on the issue and are

12   discussing a method that can both overcome Defendant's burdensome objection and provide

13   Plaintiff with the information she needs to support her motion for class certification.

14       16.    As I obtained discovery from Defendant, I began to analyze whether Plaintiff could

15   state a cognizable class claim against Defendant regarding what appeared to be its practice of not

16   paying temporary employees for work performed in connection with attending interviews with

17   Defendant's customers and potential customers as well as what appeared to be its practice of not

18   reimbursing those employees for expenses incurred in the discharge of their duties in connection

19   with attending the interviews.  I also began drafting an amended complaint.

20       17.    On May 13, 2008, I advised Defendant's counsel that Plaintiff intended to amend her

21   complaint.  I asked if Defendant would enter into a stipulation permitting Plaintiff to do so, giving

22   Defendant's counsel until May 20, 2008 to respond.  Later that day, my assistant sent a draft of the

23   amended complaint to Defendant's counsel via e-mail.  Attached as **Exhibit C** is a true and correct

24   copy of that e-mail.

25       18.    When I did not receive a response to my request for a stipulation, I contacted

26   Defendant's counsel again.  On May 22, 2008, I received an e-mail from Defendant's counsel.  He

27

28

---

4

advised that he would be discussing Plaintiff's request for a stipulation on the morning of May 23, 2008 and that he would contact me about the proposed amended complaint after that.  Attached as **Exhibit D** is a true and correct copy of that e-mail.

19.    On May 23, 2008, I received a message from Defendant's counsel in which he advised that Defendant was still considering whether to enter into a stipulation that would allow Plaintiff to amend her complaint.

20.    On May 27, 2008, I sent Defendant's counsel an e-mail asking when Plaintiff would receive a definitive response from Defendant.  I received no response to this e-mail.  **Exhibit D** includes a true and correct copy of that e-mail.

21.    On May 30, 2008, I again contacted Defendant's counsel.  I sent Defendant's counsel an e-mail noting that I had yet to receive a response to Plaintiff's request for a stipulation concerning the amended complaint.  I asked Defendant's counsel to provide Defendant's response by June 2, 2008.  **Exhibit D** includes a true and correct copy of that e-mail.

22.    On May 30, 2008, I received an e-mail from Defendant's counsel.  He asked that I provide him with a proposed stipulation and advised that he would "work to provide" me with an answer by noon on June 2, 2008.  I did not receive a response from Defendant's counsel on June 2, 2008.  **Exhibit D** includes a true and correct copy of that e-mail.

23.    On June 19, 2008, I sent Defendant's counsel a letter by facsimile and mail attaching a draft stipulation as well as another draft of the proposed amended complaint.  I noted that the only change in the proposed amended complaint was the addition of another class representative.  Attached as **Exhibit E** is a true and correct copy of this letter.

24.    On June 25, 2008, I sent Defendant's counsel another e-mail asking if Defendant intended to agree to a stipulation that would permit Plaintiff to file an amended complaint.  I advised him that I needed an answer immediately.  Attached as **Exhibit F** is a true and correct copy of that e-mail.

5

Declaration of Valerie L. Sharpe ISO Motion to Modify
Case Management Order and Amend Complaint                    Case No. CV-07-02784 CW

25.    On June 25, 2008, I discussed Plaintiff's requested stipulation with Defendant's counsel.  He advised that Defendant would not agree to the stipulation.  He followed up with an e-mail.  It stated: "To follow-up on my rather abrupt response before, Kelly is unwilling at this time to stipulate to the amended complaint given the new legal theories, the new plaintiff and the fact that we are well past the Court ordered deadline for new claims or parties.  As I indicated previously, the fact that we were past the Court ordered deadline was an issue with Kelly, but I believe the addition of the new party also added to the analysis.  I'm in the office if you wish to discuss."  **Exhibit F** includes a true and correct copy of that e-mail.

26.    On June 26, 2008, I sent a letter to Defendant's counsel advising him that Plaintiff intended to file a new complaint on July 2 and invited him to contact me if Defendant changed its position before then.  I received no response to this letter.  Attached as **Exhibit G** is a true and correct copy of that e-mail.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 10th day of July, 2008 in Oakland, California.


_____
/s/
VALERIE L. SHARPE


6

Declaration of Valerie L. Sharpe ISO Motion to Modify
Case Management Order and Amend Complaint                    Case No. CV-07-02784 CW

**EXHIBIT 1**

Eric A. Grover, Esq. (CSB# 136080)
Valerie L. Sharpe, Esq. (Of Counsel) (CSB# 191344)
**KELLER GROVER LLP**
425 Second Street, Suite 500
San Francisco, California 94107
Tel. (415) 543-1305
Fax (415) 543-7861

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHERINE SULLIVAN, on behalf of herself and all others similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>KELLY SERVICES, INC. and DOES 1 to 10, inclusive<br><br>     Defendants. | Case No.: CV 07-02784 CW<br><br>CLASS ACTION<br><br>**PLAINTIFF'S FIRST NOTICE OF TAKING THE DEPOSITION OF THE PERSON OR PERSONS MOST KNOWLEDGEABLE**<br><br>[F.R.C.P. Rule 30 ] |

**TO DEFENDANT AND ITS ATTORNEY OF RECORD HEREIN:**

PLEASE TAKE NOTICE THAT the deposition of DEFENDANT KELLY SERVICES, INC.'s person or persons most knowledgeable regarding the subject matters set forth below will be taken on January 24, 2008.  Pursuant to Federal Rule of Civil Procedure Rule 30, the deposition will take place at the law offices of Keller Grover LLP, 425 Second

1

Street, Suite 500, San Francisco, California 94107, commencing at 9:30 a.m., and continuing from day to day thereafter until completed, excluding weekends and holidays, before a certified court reporter authorized by law to administer an oath.

Said deposition will be recorded stenographically by an authorized court reporter using technology that permits real-time display of the deposition transcript. Please be advised that pursuant to Federal Rule of Civil Procedure Rule 30, this deposition may be videotaped and introduced at the time of trial.

Dated: December 20, 2007                    KELLER GROVER LLP


By: _____
                    ERIC A. GROVER
                    Attorneys for Plaintiff

2

**SUBJECT MATTERS TO BE COVERED:**

1.     For the time frame April 20, 2006 to present, the general nature of Defendant's temporary staffing services operations in California.

2.     For the time frame April 20, 2004 to present, the policy or policies regarding when Defendant deems an individual hired in California to go out on a temporary staffing assignment to have commenced his or her employment with Defendant.

3.     For the time frame April 20, 2004 to present, Defendant's policies and procedures for giving work assignments to its California temporary staffing assignment employees.

4.     For the time period April 20, 2004 to present, the manner in which Defendant classifies or categorizes its California temporary staffing assignment employees with regard to the status of their employment.

5.     The computer program that generates the reports or screens that are reflected in documents bates labeled Kelly 0037-0052, including, but not limited to, the categories of persons who input information into the program, the purpose for which it is used, the type of information that is maintained by the program, the types of reports that are capable of being generated, the manner in which the information maintained by the program is used and the meaning of the data reflected in documents bates labeled Kelly 0037-0052.

6.     For the time frame April 20, 2004 to the present, the payroll practices and/or policies that apply to Defendant's California temporary staffing assignment employees, including, but not limited to, the practices and/or policies regarding when paychecks are issued to current employees, when paychecks are issued to terminated employees, when paychecks are issued to employees who quit, when paychecks are issued to employees whose temporary assignment ends and who do not start a new assignment before the next regularly scheduled pay day. Plaintiff is particularly interested in any changes to paycheck practices and/or policies that have occurred subsequent to the filing of this action.

3

Plaintiff's First Notice of Deposition of Person Most Knowledgeable          (Case No. CV 07-02784 CW)

7.     For the time frame April 20, 2004 to present, the policy or policies regarding when Defendant deems an employee's employment with Kelly Services, Inc. to have terminated.

8.     For the time frame April 20, 2004 to present, the circumstances under which Defendant deems a California temporary staffing assignment employee to be terminated such that the wages earned and unpaid at the time of discharge are due in accordance with California Labor Code section 201.

9.     For the time frame April 20, 2004 to present, the policies, procedure sand/or circumstances under which Defendant deems a California temporary staffing assignment employee to have resigned such that wages are due in accordance with California Labor Code section 202.

10.     For the time frame April 20, 2004 to present, the extent to and manner in which Defendant has maintained and currently maintains records relating to the employment of its California temporary staffing assignment employees, including, but not limited to, records reflecting dates that work assignments commenced and ended, records indicating dates on which paychecks were issued to employees and records evidencing communications between employees and Defendant regarding actual and potential work assignments.

11.     For the time frame April 20, 2003 to present, the practices, policies and procedures  governing when, and under what circumstances, Defendant sends prospective and current temporary staffing assignment employees in California to client locations to interview with the client.

12.     For the time frame April 20, 2003 to present, the practices, policies and procedures governing when, and under what circumstances, Defendant would pay or not pay a prospective or current temporary staffing assignment employee in California for time spent in connection with an interview at the client location.

## DOCUMENTS TO BE PRODUCED

1.      For the time frame April 20, 2006 to present, all DOCUMENTS (as used herein the term "DOCUMENT" means any writing or recorded matter of every kind or description, however produced or reproduced, whether in draft or final, original or reproduction, in custody or control of you or known by you to have been created, including but not limited to: letters, correspondence, memoranda, notes, minutes of meetings, telephone conversations or personal conversations, contracts, agreements, transcripts, reports, photographs, tape recordings, videotapes, audio tapes, films, drawings, graphs, charts, monthly statements, electronic data, discs or other magnetic storage devices, faxes, electronic file notes and correspondence, emails, telephone logs, any memoranda, printouts, or statements.  "Document" also includes any summarization, compilation, or reproduction of documents.  "Document" also means a copy where the original is not in your possession or custody and means every copy of every document where such copy is not an identical copy or the original.  "Document" also includes any writing as that term is defined in California Evidence Code section 250) that evidence, refer or relate to the policy or policies regarding when Defendant deems an individual hired in California to go out on a temporary staffing assignment to have commenced his or her employment with Defendant.

2.      For the time frame April 20, 2004 to present, all DOCUMENTS that refer or relate to Defendant's policies and procedures for giving work assignments to its California temporary staffing assignment employees.

3.      For the time period April 20, 2004 to present, all DOCUMENTS that refer or relate to the manner in which Defendant classifies or categorizes its California temporary staffing assignment employees with regard to the status of their employment.

4.      All DOCUMENTS that refer or relate to the computer program that generates the reports or screens that are reflected in documents bates labeled Kelly 0037-0052, including, but

not limited to, the categories of persons who input information into the program, the purpose for which it is used, the type of information that is maintained by the program, the types of reports that are capable of being generated, the manner in which the information maintained by the program is used and the meaning of the data reflected in documents bates labeled Kelly 0037-0052.

5.     For the time frame April 20, 2004 to the present, all DOCUMENTS that refer or relate to the payroll practices and/or policies that apply to Defendant's California temporary staffing assignment employees, including, but not limited to, the practices and/or policies regarding when paychecks are issued to current employees, when paychecks are issued to terminated employees, when paychecks are issued to employees who quit, when paychecks are issued to employees whose temporary assignment ends and who do not start a new assignment before the next regularly scheduled pay day. Plaintiff is particularly interested in any changes to paycheck practices and/or policies that have occurred subsequent to the filing of this action.

6.     For the time frame April 20, 2004 to present, all DOCUMENTS that refer or relate to the policy or policies regarding when Defendant deems an employee's employment with Kelly Services, Inc. to have terminated.

7.     For the time frame April 20, 2004 to present, all DOCUMENTS that refer or relate to the circumstances under which Defendant deems a California temporary staffing assignment employee to be terminated such that the wages earned and unpaid at the time of discharge are due in accordance with California Labor Code section 201.

8.     For the time frame April 20, 2004 to present, all DOCUMENTS that refer or relate to the policies, procedure sand/or circumstances under which Defendant deems a California temporary staffing assignment employee to have resigned such that wages are due in accordance with California Labor Code section 202.

6

9.    For the time frame April 20, 2004 to present, all DOCUMETNS that refer or relate to the extent to and manner in which Defendant has maintained and currently maintains records relating to the employment of its California temporary staffing assignment employees, including, but not limited to, records reflecting dates that work assignments commenced and ended, records indicating dates on which paychecks were issued to employees and records evidencing communications between employees and Defendant regarding actual and potential work assignments.

10.   For the time frame April 20, 2003 to present, all DOCUMENTS that refer or relate to the practices, policies and procedures  governing when, and under what circumstances, Defendant sends prospective and current temporary staffing assignment employees in California to client locations to interview with the client.

11.   For the time frame April 20, 2003 to present, all DOCUMENTS that refer or relate to the practices, policies and procedures governing when, and under what circumstances, Defendant would pay or not pay a prospective or current temporary staffing assignment employee in California for time spent in connection with an interview at the client location.

7

PROOF OF SERVICE

I, Stephanie Shattuck, am employed in the County of San Francisco, State of California. I am over the age of eighteen and not a party to the within action. My business address is 425 Second Street, Suite 500, San Francisco, California 94107. On December 20, 2007, I served the foregoing document(s):

**PLAINTIFF'S FIRST NOTICE OF TAKING THE DEPOSITION OF THE PERSON OR PERSONS MOST KNOWLEDGEABLE**

on the interested party(ies) below, using the following means:

Geoffrey David DeBoskey, Esq.
Derek R. Havel, Esq.
**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
333 South Hope Street, 48th Floor
Los Angeles, CA 90071-1448

☒    (BY UNITED STATES MAIL)  I enclosed the document(s) in a sealed envelope or package addressed to the respective address(es) of the party(ies) stated above and placed the envelope(s) for collection and mailing, following our ordinary business practices. I am familiar with the firm's practice of collection and mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing of affidavit.

☐    (BY OVERNIGHT DELIVERY)  I placed a true copy in a sealed envelope addressed as indicated above this date. I am familiar with the firm's practice of collection and processing correspondence for Federal Express delivery. It is deposited in a Federal Express depository on that same day in the ordinary course of business for delivery to the parties above the next business day.

☐    (BY PERSONAL SERVICE)  I delivered such envelope(s) by hand to the office(s) of the addressee(s).

☐    (BY MESSENGER SERVICE)  I served the documents by placing them in an envelope or package addressed to the respective address(es) of the party(ies) stated above and providing them to a professional messenger service for delivery.

Proof of Service                    1                    4:07-cv-02784-CW

1
2
3

☐    (BY FACSIMILE)  Based on an agreement of the parties to accept service by fax transmission, from fax machine telephone number (415) 543-7861, I faxed a full and complete copy of the above-referenced document(s) to the party(ies) at the indicated fax numbers above.

4
5
6

☐    (BY ELECTRONIC MAIL)  Based on a court order or an agreement of the parties to accept service by email, I caused the document(s) to be sent to the respective email address(es) of the party(ies) as stated above.  I did not receive, within a reasonable amount of time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

7
8

☐    (STATE)  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

9
10

☒    (FEDERAL)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

11
12
13

_____
Stephanie Shattuck

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Proof of Service                     2                    4:07-cv-02784-CW

**EXHIBIT 2**

**Denise Diaz**

**From:** Lauren Thibodeaux [LThibodeaux@sheppardmullin.com]
**Sent:** Wednesday, January 30, 2008 5:37 PM
**To:** Valerie Sharpe
**Subject:** RE: PMK Depo Dates and Other Discovery Issues

Hi Valerie,
I just wanted to follow-up the voicemail message that I left for you this afternoon. As of today, we are
still unable to provide you with dates for the PMK depositions. As it turns out, we are having trouble
scheduling these depositions because our primary contact at Kelly Services has left the company.
Therefore, there will be a change in our contact going forward. We are meeting with our client on
Friday and hope to get more information at that time. We really appreciate your patience in this matter
and we will get you dates as soon as we can.
Thank you,
Lauren

**From:** Valerie Sharpe [mailto:vsharpe@kellergrover.com]
**Sent:** Monday, January 28, 2008 4:58 PM
**To:** Lauren Thibodeaux
**Subject:** RE: PMK Depo Dates and Other Discovery Issues

Hi Lauren:
It's been 10 days and I still have not heard from you regarding dates for the PMK depositions. Please provide
dates by Wednesday, January 30.
Thanks in advance,
Valerie

**From:** Lauren Thibodeaux [mailto:LThibodeaux@sheppardmullin.com]
**Sent:** Friday, January 18, 2008 9:18 AM
**To:** Valerie Sharpe
**Subject:** RE: PMK Depo Dates and Other Discovery Issues

Hi Valerie,
I just want to confirm that the dates noticed for the PMK depositions will not work for us or our client.
We are currently in the process of identifying the PMKs and will let you know alternative dates as soon
as possible.

Also, we are still working to verify the name of one potential witness before serving our supplemental
disclosures. We have been working diligently to do so, but it has proven to be somewhat difficult. We
hope to serve the supplemental initial disclosures as soon as we verify this information. We anticipate
that the information will be verified by Wednesday of next week.

Thank you,
Lauren

333 South Hope Street
48th Floor
Los Angeles, CA 90071-1448



**Lauren Thibodeaux**
213.617.5582 *direct* | 213.443.2807 *direct fax*
LThibodeaux@sheppardmullin.com | *Bio*

This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

**Sheppard, Mullin, Richter & Hampton LLP**

Please visit our website at www.sheppardmullin.com

**From:** Valerie Sharpe [mailto:vsharpe@kellergrover.com]
**Sent:** Monday, January 14, 2008 11:01 PM
**To:** Lauren Thibodeaux
**Subject:** PMK Depo Dates and Other Discovery Issues

Hi Lauren:

You indicated last week that the dates we have set for the PMK depositions may not work for your client. Please advise as soon as possible as to whether we need to reschedule those dates or whether we can go forward with the depositions as noticed. If we need to reschedule, please provide alternate dates as soon as possible. As I previously indicated, Mondays and Fridays work best for me and Wednesdays are generally difficult.

Also, when we spoke on January 9, 2008, we discussed the supplemental discovery responses that were promised in Mr. Deboskey's correspondence of December 14, 2008.  You stated that although Mr. Deboskey had committed to provide such responses by December 28, 2007, your client was still reviewing said supplemental responses.  You further indicated that you hoped to provide the promised supplemental responses by the end of the week but were not sure whether you could promise this. I asked whether I could expect them by the beginning of next week and you indicated that this was realistic.  As it is now the beginning of the week and we have not received anything from you, please advise as to when said supplemental responses will be received by my office.

Thanks in advance,

Valerie L. Sharpe, Esq.
Of Counsel
Keller Grover LLP
425 Second Street
Suite 500
San Francisco, CA  94107
(415) 543-1305 ext. 111
(415) 543-7861 (fax)
vsharpe@kellergrover.com

**EXHIBIT 3**

Eric A. Grover, Esq. (CSB# 136080)
Valerie L. Sharpe, Esq. (Of Counsel) (CSB# 191344)
**KELLER GROVER LLP**
425 Second Street, Suite 500
San Francisco, California 94107
Tel. (415) 543-1305
Fax (415) 543-7861
eagrover@kellergrover.com
vsharpe@kellergrover.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHERINE SULLIVAN, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>KELLY SERVICES, INC. and DOES 1 to 10, inclusive<br><br>    Defendants. | Case No.: CV 07-02784 CW<br><br>CLASS ACTION<br><br>**PLAINTIFF'S THIRD NOTICE OF TAKING THE DEPOSITION OF THE PERSON OR PERSONS MOST KNOWLEDGEABLE**<br><br>[F.R.C.P. Rule 30 ]<br><br>April 9, 2008<br>9:30 AM<br>Keller Grover LLP |

**TO DEFENDANT AND ITS ATTORNEY OF RECORD HEREIN:**

PLEASE TAKE NOTICE THAT the deposition of DEFENDANT KELLY SERVICES, INC.'s person or persons most knowledgeable regarding the subject matters set forth below will be taken on April 9, 2008. Pursuant to Federal Rule of Civil Procedure Rule 30, the deposition will take place at the law offices of Keller Grover LLP, 425 Second

1

1  Street, Suite 500, San Francisco, California 94107, commencing at 9:30 a.m., and continuing

2  from day to day thereafter until completed, excluding weekends and holidays, before a

3  certified court reporter authorized by law to administer an oath.

4          Said deposition will be recorded stenographically by an authorized court

5  reporter using technology that permits real-time display of the deposition transcript. Please be

6  advised that pursuant to Federal Rule of Civil Procedure Rule 30, this deposition may be

7  videotaped and introduced at the time of trial.

8  Dated: March 20, 2008                    **KELLER GROVER LLP**

9

10

11                              By: _____

12                                        ERIC A. GROVER
                                     Attorneys for Plaintiff

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                           2

28  Plaintiff's Third Notice of Deposition of Person Most Knowledgeable          (Case No. CV 07-02784 CW)

1  **SUBJECT MATTERS TO BE COVERED:**

2      1.      For the time period April 20, 2006 to the present, the total number of temporary

3  employees who were terminated by Defendant from an active assignment. This subject matter

4  only covers temporary employees who were working at an active assignment within the State of

5  California at the time of their termination.

6      2.      For the time period April 20, 2006 to the present, the total number of temporary

7  employees who were quit their employment with Defendant at a time when the temporary

8  employee was working on an active assignment. This subject matter only covers temporary

9  employees who were working at an active assignment within the State of California at the time

10  the quit their employment.

11      3.      For the time period April 20, 2006 to the present, the total number of temporary

12  employees who had an active assignment end and who did not start a new assignment prior to

13  their next regular pay day. This subject matter only covers temporary employees who were

14  working at an active assignment within the State of California at the time their assignment ended.

15      4.      For the time period April 20, 2006 to the present, the total number of occasions

16  where each individual California Branch location issued a Comp CARD (See Bate-stamped

17  Kelly 0454) and, for each such occasion, the reason why the Comp CARD was issued. To the

18  extent that Defendant is going to claim that the total number of Comp CARDS issued during the

19  requested time period makes it too burdensome to provide the specific reason why each Comp

20  CARD was issued, Defendant should, at a minimum, provide the number of occasions in which a

21  Comp CARD was issued to an employee as a final paycheck in advance of the employee's next

22  regularly scheduled payday.

23      5.      For the time frame April 20, 2003 to present, the total number of temporary

24  employees who had worked at least one day on an assignment and then, at sometime thereafter,

25  participated in an interview with a client or potential client where the temporary employee was

26

27                                          3

28  Plaintiff's Third Notice of Deposition of Person Most Knowledgeable          (Case No. CV 07-02784 CW)

1    not paid for the time spent in connection with the interview.  This subject matter only covers

2    temporary employees who went on an interview at a location within the State of California.

3         6.      For the time frame April 20, 2003 to present, the total number of temporary

4    employees who had worked at least one day on an assignment and then, at sometime thereafter,

5    participated in an interview with a client or potential client where the temporary employee was

6    not reimbursed for their mileage or any other expenses they incurred in connection with the

7    interview.  This subject matter only covers temporary employees who went on an interview at a

8    location within the State of California.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                        4

PROOF OF SERVICE

I, Francheska Machado, am employed in the County of San Francisco, State of California. I am over the age of eighteen and not a party to the within action. My business address is 425 Second Street, Suite 500, San Francisco, California 94107. On March 20, 2008, I served the foregoing document(s):

**PLAINTIFF'S THIRD NOTICE OF TAKING THE DEPOSITION OF THE PERSON OR PERSONS MOST KNOWLEDGEABLE**

on the interested party(ies) below, using the following means:

Derek R. Havel, Esq.
**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
333 South Hope Street, 48th Floor
Los Angeles, CA 90071-1448

☒    (BY HAND DELIVERY) I placed a true copy in a sealed envelope addressed to the person named above for personal delivery before 5:00 p.m. on this date.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

*Francheska Machado*
Francheska Machado

PROOF OF SERVICE                                    CASE NO. CV 07-02784 CW

☐    (BY PERSONAL SERVICE)  I delivered such envelope(s) by hand to the office(s) of the addressee(s).

☐    (BY MESSENGER SERVICE)  I served the documents by placing them in an envelope or package addressed to the respective address(es) of the party(ies) stated above and providing them to a professional messenger service for delivery.

☒    (BY FACSIMILE)  Based on an agreement of the parties to accept service by fax transmission, from fax machine telephone number (415) 543-7861, I faxed a full and complete copy of the above-referenced document(s) to the party(ies) at the indicated fax numbers above.

☐    (BY ELECTRONIC MAIL)  Based on a court order or an agreement of the parties to accept service by email, I caused the document(s) to be sent to the respective email address(es) of the party(ies) as stated above.  I did not receive, within a reasonable amount of time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐    (STATE)  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☒    (FEDERAL)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

*francheska Machado*

Francheska Machado

2

**EXHIBIT 4**



**SHEPPARD MULLIN RICHTER & HAMPTON LLP**
A T T O R N E Y S   A T   L A W

333 South Hope Street | 48th Floor | Los Angeles, CA 90071-1448
213-620-1780 fax | 213-620-1398 tel | **www.sheppardmullin.com**

Geoffrey D. DeBoskey
Writer's Direct Line: 213-617-5547
gdeboskey@sheppardmullin.com

Our File Number: 0NRF-130879

March 31, 2008

*VIA FACSIMILE AND U.S. MAIL*

Eric A. Grover, Esq.
Keller Grover LLP
425 Second Street
Suite 500
San Francisco, CA 94107
Facsimile: (415) 543-7861

      Re:   <u>Sullivan v. Kelly Services</u>

Dear Mr. Grover:

      This will serve to confirm the substance of our telephone call this morning. Specifically, pursuant to our March 28, 2008 telephone conversation, I contacted you to communicate Defendant's position regarding various discovery issues. Although our goal was to have a final and complete understanding of our position by noon today, we simply were not able to arrange a meeting with all pertinent decision-makers before that time. Nonetheless, in the spirit of cooperation, I provided you with a response to the extent I was able to do so.

      Specifically, with respect to Kelly's position regarding the production of "Persons Most Knowledgeable" to testify concerning divisions other than the Commercial Division, I can convey at this point that we agree to produce one additional "Person Most Knowledgeable." I expect to have further information regarding the details of that deposition by the middle of this week. I also expect to be able to communicate our position regarding additional deponents by the middle of this week. Further, Defendant agrees to produce pertinent documents from KellyWeb, the KSN binder, payroll card guidelines, and CompCard guidelines. You stated that you would discuss the issues with Ms. Sharpe, and that either you or Ms. Sharpe would contact me following that conversation.

SHEPPARD MULLIN RICHTER & HAMPTON LLP

Eric A. Grover, Esq.
March 31, 2008
Page 2

      In addition, this correspondence also serves to confirm the substance of our conversation regarding your March 10, 2008 correspondence. Specifically, Defendant is diligently working to comply with the Court's discovery order. We agreed to produce responsive documents no later than April 30, 2008. However, we hope to have documents sooner than that date and have committed to produce documents on a rolling basis to the extent we can do so.

                        Very truly yours,

                        Geoffrey D. DeBoskey

              for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

W02-WEST:LDB\400769972.1

**EXHIBIT 5**

## Denise Diaz

**From:**  Valerie Sharpe
**Sent:**  Friday, April 04, 2008 10:33 AM
**To:**  'Geoff DeBoskey'
**Cc:**  Eric A. Grover; 'Derek Havel'
**Subject:**  RE: Kelly Services

Geoff:
When we last spoke (and as is confirmed in the letter reference below) you agreed to get back to us by the middle of this week to provide more information regarding production of a second witness on the first PMK notice.  It is now Friday and neither Eric nor I have heard anything from your office.  Please advise so that we can assess whether we need to seek court intervention.  As we have discussed previously, we have a May 22 discovery cut off and cannot tolerate continued delays.
Thank you in advance,
Valerie

**From:** Geoff DeBoskey [mailto:GDeBoskey@sheppardmullin.com]
**Sent:** Monday, March 31, 2008 1:28 PM
**To:** Valerie Sharpe
**Cc:** Eric A. Grover; Derek Havel
**Subject:** RE: Kelly Services

Valerie:

I sent a confirming letter that should be reaching your fax machine shortly.  My letter is a bit more specific regarding the deposition issue, but I do believe it is generally consistent with what you said below.  Please review my letter and let me know if you have any questions or concerns.

-Geoff



| | 333 South Hope Street |
|---|---|
| **SHEPPARD MULLIN** | 48th Floor |
| SHEPPARD MULLIN RICHTER & HAMPTON LLP | Los Angeles, CA 90071-1448 |
| A T T O R N E Y S  A T  L A W | 213.620.1780 *office* |
| | 213.620.1398 *fax* |
| | **www.sheppardmullin.com** |
| | |
| **Geoff DeBoskey** | |
| 213.617.5547 *direct* | 213.443.2762 *direct fax* | |
| GDeBoskey@sheppardmullin.com | *Bio* | |

Circular 230 Notice: In accordance with Treasury Regulations we notify you that any tax advice given herein (or in any attachments) is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of (i) avoiding tax penalties or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein (or in any attachments).

Attention: This message is sent by a law firm and may contain information that is privileged or confidential.  If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

**From:** Valerie Sharpe [mailto:vsharpe@kellergrover.com]

**Sent:** Monday, March 31, 2008 1:26 PM
**To:** Geoff DeBoskey
**Cc:** 'Eric A. Grover'; Derek Havel
**Subject:** Kelly Services

Geoff:

Eric and I have touched base regarding your telephone conversation with him earlier today.  In the call you represented that:

(1)  you would provide the documents requested in our Thursday call within the next two weeks;

(2)  you would, in two weeks, begin providing documents pursuant to the motion to compel on a rolling basis; and

(3)  that you were fairly confident that Kelly would provide a witness re: other Kelly divisions and would get back to us on Wednesday to confirm whether this was the case and, assuming it was, the name of the witness and possible dates for the deposition.

Based on these representations, we do not need to have our 3:00 p.m. meet and confer telephone call today.  When you report back to us on Wednesday, we can determine whether a formal recorded meet and confer call is still necessary.

Thanks in advance,

Valerie L. Sharpe, Esq.
Of Counsel
Keller Grover LLP
425 Second Street
Suite 500
San Francisco, CA  94107
(510) 569-6998 (direct)
(415) 543-1305 ext. 111
(415) 543-7861 (fax)
vsharpe@kellergrover.com

**EXHIBIT 6**

## Denise Diaz

**From:**    Derek Havel [DHavel@sheppardmullin.com]
**Sent:**    Monday, April 14, 2008 4:29 PM
**To:**    Valerie Sharpe
**Cc:**    Geoff DeBoskey; Eric A. Grover
**Subject:**    RE: Deposition Dates

I did follow-up with my client on those dates and am waiting to hear back.
I'll get back to you ASAP.



333 South Hope Street
48th Floor
Los Angeles, CA 90071-1448
213.620.1780 *office*
213.620.1398 *fax*
**www.sheppardmullin.com**

**Derek Havel**
213.617.5424 *direct* | 213.443.2747 *direct fax*
*DHavel@sheppardmullin.com* | *Bio*

Circular 230 Notice: In accordance with Treasury Regulations we notify you that any tax advice given herein (or in any attachments) is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of (i) avoiding tax penalties or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein (or in any attachments).

Attention: This message is sent by a law firm and may contain information that is privileged or confidential.  If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

**From:** Valerie Sharpe [mailto:vsharpe@kellergrover.com]
**Sent:** Monday, April 14, 2008 11:43 AM
**To:** Derek Havel
**Cc:** Geoff DeBoskey; 'Eric A. Grover'
**Subject:** Deposition Dates

Hi Derek:
When spoke on Monday last week, we discussed possible dates for the 2d PMK depo notice and for the person to testify re: other divisions.  Where are we on these dates?

Thanks,

Valerie L. Sharpe, Esq.
Of Counsel
Keller Grover LLP
425 Second Street
Suite 500
San Francisco, CA  94107
(415) 543-1305 ext. 111
(415) 543-7861 (fax)
vsharpe@kellergrover.com

**EXHIBIT 7**



SHEPPARD MULLIN RICHTER & HAMPTON LLP

A T T O R N E Y S   A T   L A W

333 South Hope Street | 48th Floor | Los Angeles, CA 90071-1448
213-620-1780 office | 213-620-1398 fax | www.sheppardmullin.com

Writer's Direct Line: 213-617-5424
dhavel@sheppardmullin.com

April 17, 2008

Our File Number: 0NRF-130879

**VIA FACSIMILE AND U.S. MAIL**
Valerie L. Sharpe, Esq.
Keller Grover LLP
425 Second Street, Suite 500
San Francisco, California 94107

Re:    Sullivan v. Kelly Services, Inc.

Dear Ms. Sharpe:

This letter follows up on Defendant's objections and responses to Plaintiff's Re-Notice of her Second Notice of Deposition of the Person Most Knowledgeable ("PMK"), Plaintiff's Third PMK Deposition Notice, and our conversations regarding Defendant's document production to date. Initially, please note that we object to Plaintiff's multiple PMK deposition notices because it is inconsistent with the rule that each party shall only be deposed once. FRCP 30(d)(2). Accordingly, to the extent Plaintiff seeks to depose Defendant multiple times through repeated PMK notices, it is harassing and improper.

Nonetheless, as we have discussed, Defendant is willing to produce PMK witness(s) to testify regarding the guidelines, procedures, and policies for responding to claims filed against Defendant by its California temporary employees with the Workers' Compensation Appeals Board, the Employment Development Department, or the Unemployment Insurance Appeals Board since May 29, 2003, as requested by Plaintiff's re-notice of her second PMK deposition notice. However, before proceeding with the noticed deposition, we ask that you review the documents that Defendant produced on April 9, 2008 and determine whether you believe a deposition is necessary given the documents. If you believe a deposition is still necessary after review of the requested documents, Defendant will revisit production of PMK witnesses for these topics. To the extent you seek to compel a witness to testify as to each instance of a denial of a claim to one of these agencies, it is overly burdensome and oppressive. Defendant is currently working to identify these person(s) most knowledgeable and will inform you of available dates as soon as possible so that they will be on calendar in the event these depositions are ultimately needed.

Moreover, Defendant is also currently working to identify its person(s) most knowledgeable regarding its non-commercial divisions in response to Plaintiff's First Notice of Deposition of the Person Most Knowledgeable. Again, we will provide dates for this deposition as soon as possible.

SHEPPARD MULLIN RICHTER & HAMPTON LLP

Valerie L. Sharpe, Esq.
April 17, 2008
Page 2

      In your March 28, 2008 email, you listed various documents also sought by Plaintiff. These include relevant documents from KellyWeb, the KSN Operator's Manual, all versions of the employee handbook and employment application for 2004 to the present, Payroll Card Guidelines, and CompCARD Guidelines. In Defendant's April 9, 2008 production responsive to Plaintiff's third request for production of documents, Defendant included the KellyWeb Payroll Center FAQs, the Payroll Card Guidelines, and the CompCARD guidelines. These documents are bates labeled Kelly 1089 through Kelly 1112. Defendant will produce the KSN Operator's Manual and any employee handbooks and employment applications not previously produced by the end of next week.

      Defendant is also in the process of evaluating whether there are any further KellyWeb documents responsive to Plaintiff's documents requests. Defendant will produce these documents, if any, as they become available.

      Regarding Plaintiff's Third PMK Deposition Notice, as we also discussed previously, each of the deposition topics are more appropriately asked as an interrogatory because each of the topics simply seeks a number with regard to a certain data set. It is harassing and overly burdensome to produce a witness simply to testify to a number derived from a record search. The parties have agreed that Defendant will provide a written verified response to each topic to the extent it is possible to gather the requested information. Defendant has already started to gather the information needed to provide these responses and anticipates providing the requested information within the next few weeks.

      Finally, Defendant has been working diligently to collect the documents that it was compelled to produce by the Court's March 4, 2008 Order. Defendant will produce these documents on a rolling basis and certainly by the end of April 2008.

      Thank you for your attention to this letter and please contact me with any questions.

Sincerely,

Derek R. Havel

for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

W02-WEST:1LDT1\400791296.2

cc:    Geoffrey D. DeBoskey
       Lauren D. Thibodeaux

**EXHIBIT 8**

# KELLER GROVER LLP

425 SECOND STREET, SUITE 500
SAN FRANCISCO, CALIFORNIA 94107
TELEPHONE: (415) 543-1305
FAX: (415) 543-7861

*Valerie L. Sharpe, Esq.*
*Of Counsel*
*(510) 569-6998 (direct)*
*vsharpe@kellergrover.com*

April 21, 2008

**BY FAX & U.S. MAIL**

Derek R. Havel, Esq.
Sheppard, Mullin, Richter & Hampton LLP
333 South Hope Street, 48th Floor
Los Angeles, California 90071

Re:    **Sullivan v. Kelly Services, Inc.**

Dear Derek:

I am writing in response to your letter dated April 17, 2008 regarding various outstanding discovery issues.

With respect to Plaintiff's Second PMK Deposition Notice, on February 5, 2008 Defendant represented that it would not continue to assert blanket objections to the Notice and that court intervention would not be necessary to proceed with the deposition if Plaintiff prevailed on her January 28, 2008 Motion to Compel. In reliance on these representations, Plaintiff did not seek leave of court to compel Defendant's attendance at the deposition. As such, Defendant's repeated reference FRCP 30(d)(2) and claims that the Notice is harassing and improper suggests that Defendant does not intend to honor its February 5, 2008 agreement regarding the Second Notice. If Defendant does not intend to honor its February 5, 2008 agreement, please advise immediately. Otherwise, please refrain from counterproductive and baseless assertions regarding the integrity of the Second PMK Deposition Notice. Moreover, while I will agree to review the documents produced and advise as to whether we believe the Second PMK Deposition is still necessary, I strongly anticipate still needing to proceed with the deposition. With this is mind, we want to get a date on calendar immediately. I first requested confirmation of a date on March 10, 2008. As I have repeatedly reminded defense counsel, we have a May 22, 2008 discovery cut off and cannot tolerate Defendant's delays. It's astounding that even after five weeks, Defendant is still unable to offer a date for this deposition. Please, therefore, immediately provide possible dates for the Second PMK Deposition.

With respect to Plaintiff's Third PMK Deposition Notice, as we previously discussed, Plaintiff is willing to withdraw the Notice if Defendant will agree to provide written verified

Derek R. Havel, Esq.
April 21, 2008
Page 2

responses to each of the subjects listed in the Notice. Please provide a date certain on which we can expect these written responses. Again, due to the May 22, 2008 discovery cut off, a vague promise that the information will be provided "within the next few weeks" is insufficient.

With respect to Plaintiff's First PMK Notice, Defendant failed to produce a fully qualified witness. As a result, it is necessary to schedule a second deposition so that someone can testify with respect to Defendant's non-commercial divisions. I have been trying to obtain a date for this deposition since April 7, 2008. Advising us, yet again, that you will provide a date "as soon as possible" is not acceptable. We need a date immediately because of our discovery deadline.

Also with respect to the First PMK Notice, it will be necessary to schedule a deposition with a witness who is the person most knowledgeable regarding Subject Matters 5 and 10. Ms. Swiers clearly was not the person most knowledgeable regarding these subject matters. In prior discussions on this issue, you indicated you were not sure whether Defendant would agree to do this. Please advise immediately as to Defendant's final position on this matter. If Defendant is not willing to produce a witness who is more than "fairly familiar" with these subject matters, please advise as to when you are available to schedule a recorded meet and confer telephone call so that we can proceed with a motion to compel.

Finally, given the challenges Defendant has faced, and continues to face, in timely responding to discovery, it seems only reasonable that we jointly request an amendment to the current scheduling order. We propose extending the existing deadlines by 120 days. If you are amenable to this, let me know and I will prepare a proposed joint stipulation to this effect. If Defendant is not amenable to this, Plaintiff will independently petition the court for such an extension and will have no choice but to detail the numerous instances in which Defendant's conduct has prejudiced Plaintiff in her ability to comply with the existing scheduling order.

Thank you in advance for your prompt attention to these matters.

Sincerely,

*Valerie L. Sharpe/ss/*

VALERIE L. SHARPE

**EXHIBIT 9**

**Denise Diaz**

| | |
|---|---|
| **From:** | Derek Havel [DHavel@sheppardmullin.com] |
| **Sent:** | Friday, April 25, 2008 11:07 AM |
| **To:** | Valerie Sharpe; Geoff DeBoskey |
| **Subject:** | RE: Follow Up |

Valarie,

   We are agreeable to stipulating to an extension of the discovery deadlines, but do you really need 120 days? 90 days would seem to be more than enough.

   We will also be responding to your letter regarding discovery from earlier this week either today or early next week.

   Thanks.



**Derek Havel**
213.617.5424 *direct* | 213.443.2747 *direct fax*
*DHavel@sheppardmullin.com* | *Bio*

333 South Hope Street
48th Floor
Los Angeles, CA 90071-1448
213.620.1780 *office*
213.620.1398 *fax*
**www.sheppardmullin.com**

Circular 230 Notice: In accordance with Treasury Regulations we notify you that any tax advice given herein (or in any attachments) is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of (i) avoiding tax penalties or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein (or in any attachments).

Attention: This message is sent by a law firm and may contain information that is privileged or confidential.  If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

**From:** Valerie Sharpe [mailto:vsharpe@kellergrover.com]
**Sent:** Wednesday, April 23, 2008 1:30 PM
**To:** Geoff DeBoskey; Derek Havel
**Subject:** Follow Up

Geoff:
Per my voice mail yesterday afternoon, we do want to receive documents pertaining to instances where claimant was alleged to have abandoned employment.  We do not need documents pertaining to instances where claimant was terminated for alleged misconduct.

With respect to the depositions, I am ready to provide dates but, as I mentioned in my voice mail, I need to know whether we are doing both depositions in Michigan or just one.  Also, as I requested in my voice mail, I would like to know the title of the person(s) we will be deposing.

Derek:
Since we are just now learning that we will need to travel to Michigan, it is even more imperative that we extend the discovery deadlines.  If we do not have a commitment from Defendant by Friday to jointly stipulate to a 120 day extension, we will file papers with the Court early next week.

Thanks in advance,

Valerie L. Sharpe, Esq.
Of Counsel
Keller Grover LLP
425 Second Street
Suite 500
San Francisco, CA  94107
(415) 543-1305 ext. 111
(415) 543-7861 (fax)
vsharpe@kellergrover.com

**EXHIBIT 10**



**SHEPPARD MULLIN**

SHEPPARD MULLIN RICHTER & HAMPTON LLP
A T T O R N E Y S   A T   L A W

333 South Hope Street | 48th Floor | Los Angeles, CA 90071-1448
213-620-1780 office | 213-620-1398 fax | *www.sheppardmullin.com*

April 28, 2008

Writer's Direct Line: 213-617-5424
dhavel@sheppardmullin.com

Our File Number: 0NRF-130879

**VIA FACSIMILE AND U.S. MAIL**
Valerie L. Sharpe, Esq.
Keller Grover LLP
425 Second Street, Suite 500
San Francisco, California 94107

Re:    Sullivan v. Kelly Services, Inc.

Dear Ms. Sharpe:

We are in receipt of the proposed stipulation that you sent this morning. I will consult with my client and let you know whether the proposed stipulation is acceptable by the end of the day tomorrow.

We are also in receipt of your letter dated April 21, 2008. As an initial matter, Defendant has never expressed an absolute unwillingness to produce a witness in response to Plaintiff's Second PMK Deposition Notice. However, Defendant is well within its right to object to Plaintiff's multiple and improper PMK deposition notices. Moreover, we simply do not believe a PMK deposition will be necessary once all the requested documents have been produced. Nonetheless, we will provide you with dates for the witnesses that will be produced in response to Plaintiff's Second PMK Deposition Notice by May 2, 2008. We also anticipate that we will be able to provide dates for additional witness(es) to testify regarding Defendant's non-commercial division in response to Plaintiff's First PMK deposition notices by May 2, 2008.

With regard to the verified responses to Plaintiff's Third PMK Deposition Notice, Defendant will serve these responses on or before May 15, 2008.

Finally, you claim that a deposition must be scheduled for a witness who can respond to Subject Matters 5 and 10 of the First PMK Notice. Your request that Defendant produce a witness to testify regarding these Subject Matters is confusing in light of the fact that we have met and conferred on these topics several times. It is Defendant's position that Subject Matters 5 and 10 are wholly overbroad and Defendant is unable to produce a witness to testify to these matters as described in the notice. The last time we discussed these topics, you agreed to submit specific questions to Defendant regarding these topics so that Defendant can determine whether the most prudent and efficient way to provide Plaintiff with the information she seeks is through written responses or the production of a witness for deposition. To date, you have failed to provide these specific requests. Once you do so, we can discuss whether a deposition is necessary or appropriate.

SHEPPARD MULLIN RICHTER & HAMPTON LLP

Valerie L. Sharpe, Esq.
April 28, 2008
Page 2

              Thank you for your attention to this letter and please contact me with any questions.

                       Sincerely,

                       Derek R. Havel

            for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

W02-WEST:1LDT1\400811330.1

cc:    Geoffrey D. DeBoskey
       Lauren D. Thibodeaux

**EXHIBIT 11**

# KELLER GROVER LLP

425 SECOND STREET, SUITE 500
SAN FRANCISCO, CALIFORNIA 94107
TELEPHONE: (415) 543-1305
FAX: (415) 543-7861

Valerie L. Sharpe, Esq.
Of Counsel
(510) 569-6998 (direct)
vsharpe@kellergrover.com

May 6, 2008

**BY FAX & U.S. MAIL**

Derek R. Havel, Esq.
Sheppard, Mullin, Richter & Hampton LLP
333 South Hope Street, 48th Floor
Los Angeles, California 90071

    **Re:**    **Sullivan v. Kelly Services, Inc.**

Dear Derek:

    I am writing regarding a variety of outstanding discovery issues.

    Today is May 6, 2008. You promised to provide documents responsive to the Motion to Compel by April 30, 2008. If you do not produce the documents by May 9, 2008, we will have no choice but to seek Judge Zimmerman's intervention to enforce the Order.

    Pursuant to our March 27, 2008 meet and confer telephone conversation, you agreed to produce a variety of documents "within two weeks." While Defendant has subsequently produced some of the documents promised, there are still a number of documents that we have yet to receive. Specifically, we have not received:

1. All documents from KellyWeb that relate to subject matters covered in the First PMK notice, including, but not limited to the "Branch Operations, Payroll" document and the KLC Training on Payroll process for Temporary Employees (GEN23302d) which are referenced on the document bates labeled Kelly 1079;
2. All documents from KellyWeb that are covered by prior document requests;
3. The 3 ring binder that is the reference manual for KSN; and
4. All versions of the temporary employee handbook and temporary employee employment application for 2004 to the present time.

    If you are not prepared to produce these documents by May 9, 2008, please advise as to whether and when you are available on May 12, 13 or 14 to conduct a tape recorded meet and confer telephone conversation regarding this issue.

    With respect to dates for the depositions in Michigan, I would like to take them on June 26 and 27 or on June 30 and July 1. Please confirm that you will be producing a witness to address all topics in the First PMK Notice as they relate to the non-commercial division. In this regard, we will also expect Defendant to produce all documents requested in the First PMK

Derek R. Havel. Esq.
May 6, 2008
Page 2

Notice that pertain to the non-commercial division no less than 21 days before the agreed upon deposition date. If Defendant is not agreeable to this, please immediately advise. Additionally, please confirm that Defendant will be producing a witness to testify regarding the topics covered in the Second PMK Notice. If you cannot confirm these dates May 12, 2008, please advise when you are available on May 12, 13, or 14 to conduct a tape recorded meet and confer telephone conversation regarding this issue.

With respect to my prior request that Defendant produce a second witness who is properly qualified to address subject matters 5 and 10 in the First PMK Notice, Plaintiff seeks answers to the following types of questions:

1. What types of reports can be run with KSN?
2. How customized can reports in KSN be?
3. What types of reports can be run in Mobius?
4. How customized can reports from Mobius be?
5. For what time frame does KSN and Mobius store employee information?
6. What sorts of searches can be conducted in KSN and/or Mobius? For example, is it possible to search a word such as "interview" in the communication dialogue box in KSN?
7. In KSN, how are communication types categorized?
8. With respect to the KSN documents already produced, what do each of the dialogue boxes mean and how are they used?

Of course, without knowing the answers to some of these more general questions, it is impossible to provide an exhaustive list of questions. Please advise whether Defendant will produce a witness who is properly qualified to address the range of issues specified in subject matters 5 and 10 and that are more particularized above. If this witness is in Michigan, we can conduct this deposition on one of the two days we ultimately schedule for the other agreed upon depositions. If Defendant is not prepared to commit to producing a witness on these matters, please advise when you are available on May 12, 13 or 14 to conduct a tape recorded meet and confer telephone conversation regarding this issue. Plaintiff is fully prepared to avail itself of all possible remedies for Defendant's failure to designate a qualified witness.

Lastly, please be advised that even though the Court granted us additional time to complete pre-certification discovery and to file our motion for class certification. we will not allow Defendant to continually delay the process of discovery. It is doubtful that the Court would grant a third extension and we, therefore, cannot tolerate any delays.

Thank you in advance for your prompt attention to these matters.

Sincerely,

VALERIE L. SHARPE

**EXHIBIT 12**

# KELLER GROVER LLP

425 SECOND STREET, SUITE 500
SAN FRANCISCO, CALIFORNIA 94107
TELEPHONE: (415) 543-1305
FAX: (415) 543-7861

Valerie L. Sharpe, Esq.
Of Counsel
(510) 569-6998 (direct)
vsharpe@kellergrover.com

June 9, 2008

**BY FAX & U.S. MAIL**

Derek R. Havel, Esq.
Sheppard, Mullin, Richter & Hampton LLP
333 South Hope Street, 48th Floor
Los Angeles, California 90071

       **Re:**    **Sullivan v. Kelly Services, Inc.**

Dear Derek:

I am writing in a final attempt to resolve all outstanding discovery issues.

      A.    Documents Responsive to March 4, 2008 Order

As you know, we agreed to accept documents responsive to Judge Zimmerman's March 4, 2008 Order on a rolling basis. We last received responsive documents from your office on or around May 17 via Federal Express. We reviewed these and all documents produced to date. We found none related to proceedings before the California Employment Development Department ("EDD") or the California Unemployment Insurance Appeals Board ("CUIAB") in which Defendant took the position that an employee's *disability* claim should be denied because the claimant's employment had ended whether voluntarily or otherwise. Please confirm that Defendant searched for documents it submitted to the EDD and CUIAB regarding disability claims and that Defendant has produced *all* documents called for by Judge Zimmerman's Order.

If Defendant has not looked for documents pertaining to disability claims and/or has not produced all responsive documents, please produce those documents no later than June 16, 2008 or state in writing why Defendant cannot meet this deadline. Please keep in mind that, to the extent Defendant produces additionally responsive documents, we will not be able to provide 21 days notice as to any specific claims about which Plaintiff may ask questions at the deposition. We will, however, provide this information within 5 business days of receiving any additionally responsive documents.

      B.    Plaintiff's Request for Production Sets 1, 2, and 3

As established at the deposition of Kristin Swiers, KellyWeb clearly contains documents that are responsive to many of the requests set forth in Plaintiff's Request for Production Sets 1, 2, and 3 for both the Commercial and Non-Commercial Divisions. Defendant nevertheless

Derek R. Havel, Esq.
June 9, 2008
Page 2

refuses to produce all of those responsive documents, choosing instead to withhold them based solely on the assertion that our request for KellyWeb documents is "overbroad, burdensome, and vague and ambiguous." (*See* Letter to V. Sharpe from D. Havel dated May 9, 2008 ("May 9 Letter").) Plaintiff seeks KellyWeb documents only to the extent that they are responsive to the Requests. Defendant willingly responded to those Requests including producing training materials on relevant topics; it cannot now refuse to produce other similarly responsive documents simply because they happen to be housed on KellyWeb.

Plaintiff renews her request for all documents responsive to her Requests, including those on KellyWeb. If Defendant is not prepared to produce them by June 16, 2008, please advise as to when you are available on June 18, 19, or 20 to conduct a tape-recorded meet and confer telephone conversation regarding this issue.

C.   Plaintiff's First Notice of Taking Deposition of the Person or Persons Most Knowledgeable

1.   Deposition Testimony

Plaintiff served her First Notice of Taking Deposition of the Person or Persons Most Knowledgeable ("First PMK Notice") on December 20, 2007. Although Defendant claims otherwise, it has yet to produce a competent witness who can testify on subject matters 5 and 10 of the First PMK Notice. Subject matter 5, for instance, expressly calls in part for a witness who can testify as to the "types of reports that are capable of being generated" on Defendant's "Kelly Staff Network" ("KSN"). Ms. Swier, who Defendant claims "was knowledgeable regarding KSN" (May 9 Letter at p. 2), readily admitted at her deposition that she did not know all of the reports that could be generated on KSN. (Swier Depo. 74:17-19.) She also readily admitted that she did nothing before her deposition to familiarize herself with KSN, how it works, or the reports that could be generated from it. (*Id.* at 67:4-8.) Even a cursory review of her deposition transcript reveals that Ms. Swier, in fact, was not a competent witness on subject matters 5 and 10.

Moreover, in an effort to assist Defendant with the task of identifying a second witness who is properly qualified to address subject matters 5 and 10, I provided you with a list of answers sought by Plaintiff. (*See* Letter to D. Havel from V. Sharpe dated May 6, 2008.) In response, you argue that Plaintiff seeks irrelevant information. (May 9 Letter at 2.) That is patently incorrect. All of the information sought by Plaintiff goes to the ascertainability and manageability of the classes Plaintiff seeks to represent and is therefore relevant. Plaintiff renews her request that Defendant produce a witness who is properly qualified to address subject matters 5 and 10. If this witness is in Michigan, we can conduct this deposition on June 30, July 1 or 2, 2008. If Defendant does not commit to producing a witness on these matters by June 16, 2008, please advise as to when you are available on June 18, 19, or 20 to conduct a tape-recorded meet and confer telephone conversation regarding this issue.

Derek R. Havel, Esq.
June 9, 2008
Page 3

2.    Responsive Documents

Defendant has agreed to produce "any non-objectionable, responsive documents that were not previously produced related to the non-commercial divisions which are responsive to the document requests contained within the First PMK Deposition Notice twenty-one days prior to the deposition." (May 9 Letter at p. 2.) Because the deposition will take place on July 1 and 2, we expect to receive *all* remaining documents no later than June 16 2008. Finally, we note Defendant's unilateral decision to produce only what it deems "non-objectionable, responsive documents." (Letter to V. Sharpe from L. Thibodeaux dated June 9, 2008 at p. 1.) It is unclear what Defendant means by "non-objectionable" documents. Plaintiff expects Defendant to produce *all* documents responsive to Plaintiff's outstanding discovery requests related to the non-commercial divisions. If Defendant has a different view, please advise so that we can conduct a tape-recorded meet and confer telephone conversation regarding this issue as well.

D.    Plaintiff's Third Notice of Taking Deposition of the Person or Persons Most Knowledgeable

As you know, Plaintiff agreed to consider accepting verified responses to the subject matters set forth in Plaintiff's Third Notice of Taking Deposition of the Person or Persons Most Knowledgeable ("Third PMK Notice") in lieu of deposition testimony. On May 23, I received an e-mail from Lauren Thibodeaux of your office explaining that Defendant was still in the process of finalizing the responses. I have heard nothing since then. If we do not receive the verified responses by June 16, 2008, the deposition will have to go forward. We are available on either June 30 or July 3.

E.    Plaintiff's Fourth Notice of Taking Deposition of the Person or Person's Most Knowledgeable

Finally, attached is Plaintiff's Fourth Notice of Taking Deposition of the Person or Persons Most Knowledgeable. As noted, Plaintiff seeks deposition testimony regarding the position taken by Defendant before the Division of Labor Standards Enforcement of the California Department of Industrial Relations regarding the vacation benefits claimed by former employee, Maria Elena Villagomez. Should Defendant refuse to produce a competent witness who can testimony on that issue, Plaintiff likely will move to compel Defendant to produce a witness. Plaintiff also will consider noticing the deposition of the attorney who represented Defendant on that matter, as he is the only individual known to Plaintiff who can testify competently as to what policies or procedures compelled Defendant to issue Ms. Villagomez' final paycheck well after her termination by Defendant.

With respect to the enclosed deposition notice, we have noticed the deposition for August 18, 2008, assuming that the appropriate witness is located in Michigan. I will be on a family vacation on Torch Lake and can extend my trip to be in the Detroit area on August 18, 2008. This proposed date is mindful of the fact that noticing the deposition for June 30 or July 3, the dates on which Ms. Diaz will already be in Michigan, might not, given Defendant's past practices, be a realistic time frame within which Defendant will actually produce a witness. I

Derek R. Havel, Esq.
June 9, 2008
Page 4

presume, therefore, that you will take this into account when determining whether you and your client can confirm the proposed August 18, 2008 date. Of course, if Defendant is prepared to produce a witness in Michigan on June 30 or July 3, we are prepared to go forward with those dates as well.

In the event the witness is located in California, please provide, by June 16, 2008, a possible California location and several proposed dates for this deposition that are before August 18, 2008. If we do not have confirmed dates by the close of business on June 16, 2008, please advise as to when you are available on June 18, 19, or 20 to conduct a tape-recorded meet and confer telephone conversation regarding this issue.

Thank you in advance for your prompt attention to these matters.

Sincerely,

VALERIE L. SHARPE

Attachment

**EXHIBIT 13**



333 South Hope Street | 48th Floor | Los Angeles, CA 90071-1448
213-620-1780 office | 213-620-1398 fax | *www.sheppardmullin.com*

Writer's Direct Line: 213-617-5424
dhavel@sheppardmullin.com

June 16, 2008

Our File Number: 0NRF-130879

**VIA FACSIMILE AND U.S. MAIL**
Valerie L. Sharpe, Esq.
Keller Grover LLP
425 Second Street, Suite 500
San Francisco, California 94107

Re:    Sullivan v. Kelly Services, Inc.

Dear Ms. Sharpe:

We are in receipt of your letter dated June 9, 2008 and address each issue separately below.

1.    Documents Responsive to the Court's March 4, 2008 Order

As I have previously indicated, to comply with the Court's March 4, 2008 order, Defendant performed a search of all documents from May 29, 2003 through November 29, 2003 wherein Defendant took the position before the Employment Development Department ("EDD"), the California Unemployment Insurance Appeals Board ("CUIAB"), and the Workers' Compensation Appeals Board ("WCAB") that an employee was not entitled to benefits because their employment with Defendant had ended. Defendant's search included a search of documents related to disability claims, however, none were found for the relevant period.

2.    Plaintiff's Requests for Production

Defendant has never refused to provide documents which are stored on KellyWeb. My prior letter simply pointed out that your overarching request in your May 6 letter was overbroad in that it did not relate to a specific category of documents. In fact, documents from KellyWeb have already been produced, some of which were identified in my May 9, 2008 letter. Defendants have already searched for and produced responsive documents from KellyWeb. However, Defendant will conduct another search to determine whether there are any further documents on KellyWeb which are responsive to Plaintiff's requests. To the extent any further documents exist, Defendant will send them to you immediately.

SHEPPARD MULLIN RICHTER & HAMPTON LLP

Valerie L. Sharpe, Esq.
June 16, 2008
Page 2

3.    Subject Matters 5 and 10 of Plaintiff's First PMK Deposition Notice

     a.    Deposition Notices

          In my letter to you dated May 9, 2008, I asked that you identify the specific information that you wished to obtain, rather than asking overarching questions related to the universe of different reports that could conceivably be run on KSN. You apparently ignored this request, but I will reiterate it as part of the meet and confer process. Nevertheless, I would now also ask if you are willing to accept documentation, to the extent it exists, evidencing the different reports that can be run on KSN, in lieu of an in-person deposition. As you know, we are already providing at least 4 witnesses in response to your multiple PMK deposition notices, one of which already testified about several available reports under KSN. Finally, we continue to contend that the information sought is irrelevant to class certification issues, and that your bald assertion that it goes to ascertainability and manageability, without further explanation, is insufficient.

     b.    Responsive Documents

          Defendant has produced documents related to its non-commercial divisions. In responding to Plaintiff's initial document requests, Defendant set forth certain objections. It has every right to apply those objections to the documents produced related to the non-commercial divisions. By indicating that Defendant would only produce non-objectionable documents, it is indicating that it will not produce responsive documents protected by the attorney-client privilege, the attorney work product doctrine, or the privacy rights of third parties.

4.    Plaintiff's Third PMK Deposition Notice

          Defendant remains firm that the information requested in Plaintiff's third PMK deposition notice is more appropriately suited for verified responses, and Plaintiff has already agreed to accept verified responses in lieu of a deposition. However, in order to produce accurate information regarding hundreds of thousands of employees, Defendant has been required to run various reports and compile large amounts of information. Defendant has worked, and continues to work, diligently to compile accurate information. Defendant is unable to produce these responses by your June 16, 2008 deadline, but will provide the information by June 30, 2008.

5.    Plaintiff's Fourth PMK Deposition Notice

          As you are well aware, leave of court must be obtained to take more than one deposition from the same party. FRCP 30(a)(2)(A)(ii). In the spirit of cooperation, Defendant has agreed to provide witnesses in response to Plaintiff's first and second PMK deposition notices. Defendant has also agreed to provide verified responses to Plaintiff's third PMK

SHEPPARD MULLIN RICHTER & HAMPTON LLP

Valerie L. Sharpe, Esq.
June 16, 2008
Page 3

deposition notice. However, with this fourth notice, Plaintiff is clearly attempting to take advantage of Defendant and bypass the Federal Rules of Civil Procedure. Therefore, Defendant will not produce a witness to testify in response to Plaintiff's fourth PMK deposition notice.

The testimony sought by Plaintiff's fourth PMK deposition notice is unclear because there was no "December 20, 2005" letter attached to the notice. Please send the letter to my attention as soon as possible. However, it seems clear from the description provided in the notice and in your letter that the information sought by Plaintiff is irrelevant to the present action. The notice deals with one individual's claim for vacation benefits in 2005, and it is harassing and unduly burdensome for Defendant to produce a PMK witness on this discreet DLSE claim without some showing of potential relevance to this action. Moreover, Defendant will object to any deposition notice or subpoena of the attorney who represented Defendant on the basis that any knowledge that he has related to "what policies or procedures compelled Defendant to issue Ms. Villagomez's final paycheck" is clearly protected by the attorney-client privilege.

Please feel free to contact me if you would like to discuss any of these issues further.

Sincerely,

Derek R. Havel

for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

W02-WEST:1LDT1\400897924.1

cc:    Geoffrey D. DeBoskey
       Lauren D. Thibodeaux

**EXHIBIT 14**

# KELLER GROVER LLP

425 SECOND STREET, SUITE 500
SAN FRANCISCO, CALIFORNIA 94107
TELEPHONE: (415) 543-1305
FAX: (415) 543-7861

*Valerie L. Sharpe, Esq.*
*Of Counsel*
*(510) 569-6998 (direct)*
*vsharpe@kellergrover.com*

June 18, 2008

**BY FAX (213-620-1398) & OVERNIGHT MAIL**

Derek Havel, Esq.
Sheppard, Mullin, Richter & Hampton LLP
333 South Hope Street, 48th Floor
Los Angeles, California 90071

Re:    <u>Sullivan v. Kelly Services, Inc.</u>

Dear Derek:

We are in receipt of your letter dated June 16, 2008 and it appears that a number of issues are still in dispute and that it will likely be necessary to seek court intervention. As such, despite your assertions to the contrary, it will be necessary to schedule a tape recorded meet and confer call. I am available tomorrow between 9:00 a.m. and 2:00 p.m. and all day on Friday. Please advise as to when you are available on either of those days. If you are unable, or unwilling, to schedule a call tomorrow or Friday, we will file our required letter brief on Monday, June 23, 2008, advising Judge Zimmerman, in part, that defense counsel refused to participate in the requisite meet and confer, recorded telephone conference.

In an effort to further the meet and confer process and in anticipation of a follow up telephone call tomorrow or Friday, please consider the following with respect to each of the positions taken in your June 16, 2008 letter.

**I.    <u>Documents Responsive To the Court's March 4, 2008 Order</u>**

As stated previously, it seems implausible that there are no responsive documents relative to disability claims. During the Court specified time frame, Kelly Services never denied a claim for disability benefits on grounds the claimant was not an employee and, therefore, not eligible for benefits? Please be prepared to discuss, in detail, the search methodology employed by Kelly Services in attempting to produce responsive documents relative to disability claims. Such discussion will aid Plaintiff in assessing whether to seek further discovery for a broader time

frame as indicated by Judge Zimmerman's Order.

## II.    KellyWeb Documents

You state that "to the extent they exist," Defendant will "immediately" provide any additionally responsive documents from KellyWeb. We must receive those documents by the close of business on Friday, June 20, 2008 in order to adequately review them prior to the depositions scheduled for June 30 and July 1. Keep in mind also that we should receive KellyWeb documents pertaining to both commercial and non-commercial divisions. If such documents are not provided as requested, we will seek court intervention on Monday, June 23, 2008.

## III.    Subject Matters 5 and 10 of Plaintiff's First PMK Deposition Notice

Your demand that we provide more specific questions regarding the information sought with these topics and/or that we accept written responses to specific questions is a red-herring. As we stated when we last had a meet and confer telephone call, Defendant responding to written questions would be insufficient because it prevents Plaintiff from timely asking any necessary follow up or explanatory questions. While we indulged Defendant and provided a list of sample questions, such effort was for naught. Defendant is still apparently intent on thwarting Plaintiff's legitimate attempts at discovery.[1]

Plaintiff is entitled to depose the person most knowledgeable regarding the subject matters 5 and 10. Indeed, Defendant did not seek a protective order as to these topics and produced a witness who was allegedly knowledgeable regarding these topics. In reality, Ms. Swiers was not knowledgeable. Although the notice stated, in part, that Plaintiff sought to depose the Company regarding "the types of reports that are capable of being generated" by KSN, Ms. Swiers testified that she did not know all the types of reports that could be run with KSN. (Swiers Deposition 75:11-18.) Additionally, the Notice requested that the Company produce the person most knowledgeable regarding "the meaning of the data reflected in documents bates labeled Kelly 0037-0052." As to various of the elements of the specified documents, Ms. Swiers testified that she did not know the meaning of the data reflected. (Swiers Deposition 76:24-1; 77:20-22; 92:10-12; 93:2-4; 94:25-95:2; 97:7-8; 99:23-25; 100:16-21.) Significantly, she also testified that she did not do anything to prepare to discuss the types of reports that could be run in KSN, that she only infrequently uses KSN for limited purposes, is not readily familiar with the KSN manual and does not train employees in how to use KSN. (61:21-62:15; 75:11-18.) Clearly, she was not, as required, able to testify fully as to the matters designated.

Defendant's failure to designate a proper witness on subject matters 5 and 10 is sanctionable and, at the very least, Defendant is obligated to produce a new witness. *Marker v.*

---

[1] In this regard, Defendant notes that the issues raised in subject matters 5 and 10 are relevant to class certification because they go to ascertainability. Understanding the types of reports that can be run in KSN may aid Plaintiff is establishing that it is possible to ascertain putative class members by identifying the persons who, for example, were classified as available and did not have a another confirmed assignment before the next pay period or by identifying the persons who went on interviews.

*Union Fidelity Life Ins. Co.* 125 F.R.D. 121, 126 (MD NC 1989). If Defendant does not commit, by 10:00 a.m. on June 20, 2008, to producing such a witness either locally, on a date certain, or in Michigan on July 2, 2008, we will seek court intervention. In the interim, I am enclosing a deposition notice for Allison M. Everett, Senior Vice President of Information Technology to be taken in Michigan on July 2, 2008. At the very least, she should be able to identify the individuals from whom we can seek the information specified in subject matters 5 and 10.

## IV.    **Plaintiff's Third PMK Notice**

Because Defendant's past practices make it difficult to trust that we will actually receive the promised written responses by June 30, 2008, we enclose a Re-Notice of Plaintiff's Third PMK Notice. Of course, if we receive the information promised on June 30, 2008, we will take the deposition off schedule.

## V.    **Plaintiff's Fourth PMK Deposition Notice**

It is entirely unclear that Rule 30(a)(2)(A)(ii) is intended to prevent a party from noticing more than one deposition pursuant to Rule 30(b)(6), which is the section pursuant to which this deposition is noticed. If you have any authority for this proposition, please promptly provide it. In any event, Defendant's objection to this deposition is really one of form over substance. If Plaintiff knew the name of the person who was knowledgeable regarding the subject matter identified in the fourth notice, we would have named that person in the notice and Defendant's objection would be baseless. Presumably, the person most knowledgeable regarding the subject matter in the fourth notice is not Ms. Swiers and, in this regard, we are not seeking to depose her for a second time, which would appear to be the practice prohibited by Rule 30(a)(2)(A)(ii). Since we don't know the name of the person who would be able to address the issue raised in the December 30, 2005 letter from Martin C. Brook to the DLSE and since we are entitled to take at least 10 depositions, this notice can hardly be construed as an effort to circumvent the Federal Rules of Procedures. We are confident that if forced to seek court intervention to compel this deposition, we will prevail.

As you will see from the December 30, 2005 letter, which I emailed to you earlier today, the referenced claimant was terminated on November 16, 2005 but did not receive her final paycheck until several weeks later. You will recall that, at her deposition, Ms. Swiers testified that when an employee is affirmatively terminated from Kelly, the employee is issued his or her final pay check on the date of termination. However, based on information and belief, and based on the evidence contained in Defendant's letter to the DLSE regarding the vacation benefits claimed by former employee, Maria Elena Villagomez, Ms. Swiers testimony appears to at odds with Defendant's actual practice, at least in this circumstance. Accordingly, with this deposition, we seek information regarding the policies and procedures pursuant to which Ms. Villagomez ended up receiving her final paycheck weeks after her termination. Such information is relevant to issues of commonality, i.e. what is the policy in reality and are there variations in the way it is implemented? In this regard, Defendant's objection to the notice on grounds of relevance is baseless.

If Defendant does not commit to produce a witness either locally on a date certain or in

Michigan during the week of June 30, 2008, we will seek court intervention to compel the deposition. In the interim, I am enclosing a deposition notice for Nina M. Ramsey, Senior Vice President of Human Resources, to take place on July 2, 2008 in Michigan. At the very least, she should be able to identify the person(s) who can address the issues raised by the Fourth PMK Notice.

So that we may address the issues raised herein, please immediately advise as to when you are available to conduct a recorded meet and confer telephone call on Thursday or Friday.

Sincerely,

*Valerie Sharpe /Am/*

VALERIE L. SHARPE

Enclosures

**EXHIBIT 15**

# Catherine Sullivan
## vs.
# Kelly Services, Inc.

Deposition of

# **<u>Shannon Ross Stahl</u>**

Volume 1

July 2, 2008

Reported By: Dawn M. Houghton, CSR 3071
Job: 7043

Page 158

1          or their career objective, so it's a two-way benefit.

2   BY MS. DIAZ:

3   Q.    Okay.  And do they get paid for going on interviews with

4          customers?

5                    MR. DeBOSKEY:  Objection, calls for speculation,

6          hypothetical.  You can answer if you know.

7                    THE WITNESS:  I can only speak for my own

8          experience.  I haven't observed that.

9   BY MS. DIAZ:

10  Q.    Okay.  And do you know if that's a policy at Kelly that

11         temporary employees within the PT divisions do not get paid

12         for going on interviews?

13                   MR. DeBOSKEY:  Same objections, vague and

14         ambiguous.  I'm sorry.

15                   THE WITNESS:  I wouldn't say it's a policy because

16         it's not like we say we don't want you charging for

17         interviews.

18  BY MS. DIAZ:

19  Q.    Well, in your experience, have you seen any evidence that

20         temporary employees put in time sheets for interview time?

21                   MR. DeBOSKEY:  Remember the question is have you

22         seen, so if you've seen it, then yes, if you haven't seen

23         it, then no, but you're not expected to speculate as to

24         whether it's ever happened in the universe anywhere.

25                   THE WITNESS:  Yes, I have -- I have not seen a

Shannon Ross Stahl

Page 159

```
 1          temporary employee submit a time sheet for an interview.
 2     BY MS. DIAZ:
 3     Q.   Okay.  So is there anything in KellyWeb in terms of -- is it
 4          the learning library?
 5     A.   Well, KellyWeb houses a lot of our documentation, but the
 6          learning center you can use to schedule courses, you know.
 7          It's more of our learning management system than it is just
 8          our general KellyWeb that has -- you can access the learning
 9          center from the KellyWeb.
10     Q.   Okay.  So let me ask you this.  Do you know if there are any
11          materials on KellyWeb in the learning center that recruiters
12          could use to help prepare candidates for interviews?
13     A.   Yes.
14     Q.   Okay.  Can you generally describe those documents, is it
15          like Field Training Services training or --
16     A.   There may be some -- some training on interview prep, but
17          there's also some kind of collateral that's externally based
18          for our employees to give to them to prepare for an
19          interview, and they could access certain tools and resources
20          on mykelly.com.
21     Q.   The candidates themselves?
22     A.   Uh-huh, uh-huh, to help them prepare.
23     Q.   Okay.  And so is there a work instruction related to the
24          interview process the branches use?
25     A.   I don't know if I understand the question.
```

Shannon Ross Stahl

Page 160

```
 1   Q.   Is there a work instruction that specifically relates to
 2        prepping temporary employees for customer interviews?
 3   A.   You know what?  There may be a job aid out there on that.
 4        I'm not a hundred percent sure.  If there were, chances are
 5        it would be referenced in this work instruction.  A job aid
 6        is kind of like step down, task instructions and job aids,
 7        and there are tools that would support the work instruction.
 8        There could be one out there for prepping the candidate.
 9        I'm not sure.
10   Q.   Okay.  And do you know if Kelly pays mileage or expenses for
11        candidates to attend interviews with customers?
12   A.   You know what?  I don't want to answer that one only because
13        I don't know the certain answer, and in all of my travels
14        across the world, because I've worked for Kelly in Europe
15        and Canada and here, there's different rules governing that,
16        so I don't want to answer because I'm not a hundred percent
17        sure.
18   Q.   All right.
19               MR. DeBOSKEY:  That's -- and can we go off the
20        record for just a second?
21               (Brief discussion off the record.)
22               (Deposition Exhibit Number 15 was marked.)
23   BY MS. DIAZ:
24   Q.   While you're reviewing that, for the record, Exhibit 15 are
25        Kelly employee handbooks for the Professional, Technical,
```

1 | STATE OF MICHIGAN)
                   )ss
2 | COUNTY OF KENT  )

3

4

5          I certify that this transcript, consisting of 188

6    pages, is a complete, true, and correct record of the

7    testimony of SHANNON R. STAHL held in the case on July 2,

8    2008.

9

10          I also certify that prior to taking this

11    deposition SHANNON R. STAHL was duly sworn to tell the

12    truth.

13

14          I also certify that I am not a relative or

15    employee of or an attorney for a party; or a relative or

16    employee of an attorney for a party; or financially

17    interested in the action.

18

19

20
     Dated:  7-11-08.
21                                  _Dawn Houghton_

22                                  _____
                                    Dawn M. Houghton, CSR-3071
                                    Certified Shorthand Reporter
23                                  O'Brien & Bails
                                    141 East Michigan, Suite 601
24                                  Kalamazoo, MI 49007
                                    1-800-878-8750
25                                  My commission expires:  7-17-2011

**EXHIBIT 16**

# Catherine Sullivan
## vs.
# Kelly Services, Inc.

Deposition of

# **Mariana Craft**

Volume 1

July 3, 2008

Reported By: Dawn M. Houghton, CSR 3071
Job: 7054

Mariana Craft

Page 29

```
 1   A.    It could be.

 2   Q.    That you would put in KSN?  And where would you put that?

 3   A.    In the application on the employment record.

 4   Q.    The employment record?  And so what would that be, is that

 5         like an add communication?

 6   A.    Yes, that's correct.

 7   Q.    Okay.  And would that -- would it show the date?  Would KSN

 8         reflect the date that that entry was made?.

 9   A.    Yes, it would.

10   Q.    Okay.  And, you know, I'm a little bit lost.  I've seen at

11         least through these -- this manual all these different

12         screens.  Is there just a list of all of the fields where --

13         that collect all the various information?  I don't know if

14         you understand what I'm trying to say.

15   A.    I believe I do.  When the person goes in to add a

16         communication, they can click a little arrow and it will

17         bring up a little popup window that shows up all the

18         different types of communications you can log.

19   Q.    Okay.  So do you know what's on that list?

20   A.    Not everything.  I couldn't -- there's many different types

21         of communication.  I couldn't remember all of them.

22   Q.    Okay.  So when you make that entry, you said that it shows

23         the date and it's in just the communications section.  What

24         would that be called, the part where you add communications,

25         what is that?
```

Mariana Craft

1      employee was working on active assignment, in other words,

2      somebody was -- had the status of active, right, or

3      placed/assigned?

4  A.   Either placed, future, or possible.

5  Q.   Okay.  So your search would then include all three of those

6      statuses?

7  A.   Yes, because they all designate work or getting ready to

8      work or they're actually filled on an assignment, yes.

9  Q.   Could you run that report that would identify the employees

10     that had those three statuses and who quit?

11         MR. DeBOSKEY:  You're saying be able to determine

12     who actually quit, who called up and said I quit?

13 BY MS. DIAZ:

14  Q.   Right, employees in California who had a status of either

15     placed/assigned, future, possible, the ones you just told me

16     about, could you generate a report that identified the

17     employees who had that status and who quit?

18  A.   Yes.  And I don't know if you -- do you want -- can I

19     provide specifics on how it would be done or does it matter?

20  Q.   Yeah, I would like to know that.

21         MR. DeBOSKEY:  Sure.

22         THE WITNESS:  Because it's not just the fact that

23     the person went from placed to available or, you know,

24     placed to terminated.  The point is how the assignment

25     closed.  There's close reasons that you can associate when

Mariana Craft

Page 64

1        you close an assignment and there's different close reason

2        families.

3                An assignment might be closed because it was

4        completed and our obligation to the customer is complete.

5        They said it would be 90 days, the customer's happy, and

6        that's the end of the assignment with that particular

7        customer for the record.

8                There is another closed reason which is

9        performance related, unacceptable behavior, fighting on

10       assignment, things like that.  So you have the performance

11       family and then all these different minor close reasons that

12       fall underneath it.  And the one that, to me, as a reporting

13       person, generally would designate a quit type of situation

14       would be employee removed self.

15   BY MS. DIAZ:

16   Q.    Okay.

17   A.    So it wasn't closed because the customer was happy and the

18         order was complete, it wasn't closed for a performance

19         reason, but it was closed because the person said, you know

20         what, I don't like that anymore, I don't like the pay, I

21         don't want to do the job anymore, I don't want to work for

22         Kelly anymore.  Those are all called employee removed self

23         reasons, or a moving, or I joined the military, I can't do

24         that anymore, I'm a weekend warrior, I'm going to be gone in

25         the summer, whatever reason, so the close of the order was

1   STATE OF MICHIGAN)
                   )ss

2   COUNTY OF KENT    )

3

4

5                 I certify that this transcript, consisting of 127

6      pages, is a complete, true, and correct record of the

7      testimony of MARIANA CRAFT held in the case on July 3, 2008.

8

9                 I also certify that prior to taking this

10     deposition MARIANA CRAFT was duly sworn to tell the truth.

11

12               I also certify that I am not a relative or

13     employee of or an attorney for a party; or a relative or

14     employee of an attorney for a party; or financially

15     interested in the action.

16

17

18

  Dated:  7-11-08.

19

20                Dawn M. Houghton, CSR-3071
                 Certified Shorthand Reporter

21                O'Brien & Bails
                 141 East Michigan, Suite 601

22                Kalamazoo, MI 49007
                 1-800-878-8750

23                My commission expires:  7-17-2011

24

25

127