IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHERINE E. SULLIVAN,<br><br>    Plaintiff,<br><br>  v.<br><br>KELLY SERVICES, INC. and DOES 1 TO 10, inclusive,<br><br>    Defendants.<br>                                               / | No. C 07-2784 CW<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

    Defendant Kelly Services, Inc. has filed a motion for summary judgment.  Plaintiff Catherine Sullivan opposes the motion.  The motion was heard on October 30, 2008.  Having considered all of the parties' papers and argument on the motions, the Court hereby grants Defendant's motion.

BACKGROUND

    Defendant is a temporary employment agency.  Stahl Dec. ¶ 2. Plaintiff worked for Defendant as a temporary staffing employee beginning in February, 2006.  Sullivan Dep. at 29:12-15.  Defendant employs individuals, and then assigns those individuals to work in

various work settings. Stahl Dec. ¶ 2. Unless either Defendant or an employee affirmatively acts to terminate the employment relationship, an employee will remain listed as a Kelly employee and appear on searches of current available employees, even if that employee is not performing a work assignment. Id. at ¶ 7. Plaintiff signed an agreement with Defendant that states, "as a Kelly employee, I understand that I am not an employee of the customers to whom Kelly assigns me, regardless of any customer statement, conduct, or belief." Deboskey Dec., Ex. F at 2.

After two interviews with Defendant's customer Managed Health Network (MHN), Plaintiff accepted an assignment to work for MHN. Sullivan Dep. at 97:9-101:13. Plaintiff's assignment at MHN was extended several times and ultimately lasted approximately six months. Id. at 102:1-10. The assignment ended on August 11, 2006. Id. at 107:8-11. On August 15, 2006, Plaintiff called Defendant to ask for her final paycheck. Stahl Dec. ¶ 16 and Ex. B. Plaintiff was informed that, although her assignment with MHN ended, she was still Defendant's employee. Sullivan Dep. at 112:13-20. Plaintiff received her final paycheck for the work she performed with MHN on August 16, 2006. Id. at 84:10-16. She received this paycheck in accordance with Kelly's normal weekly payment schedule. Stahl Dec. ¶ 12-13.

Within weeks of the end of Plaintiff's assignment with MHN, Plaintiff attended two interviews with Wells Fargo Bank, also one of Defendant's customers. Sullivan Dep. at 123:11-125:6. Sometime in August or September, 2006, Wells Fargo offered Plaintiff a temporary position. Id. at 127:12-129:7. Plaintiff declined the

2

assignment. Id. At no point did Plaintiff resign from Kelly Services. Id. at 112:9-113:11. Nor did Kelly Services tell Plaintiff that it was terminating her employment when her assignment with MHN ended. Id.[1]

On April 20, 2007, Plaintiff filed a class action complaint in Alameda County Superior Court alleging violations of California Labor Code §§ 201 and 202, which provide that an employer must, in most cases, pay its employee's earned and unpaid wages immediately upon discharge, layoff or resignation. Plaintiff also alleged a claim for unfair business practices pursuant to California Business and Professions Code § 17200. Defendant filed a notice of removal on May 29, 2007.

In July, 2007, the parties stipulated that Plaintiff could file a first amended complaint adding a claim pursuant to the private attorneys general provision of the California Labor Code. Cal. Lab. Code § 2699. On July 27, 2007, Plaintiff filed the operative complaint.

On September 17, 2007, the Court entered a case management order, setting December 31, 2007, the date proposed by the parties, as the deadline to add additional parties or claims. See Docket No. 19. On July 10, 2008, Plaintiff moved the Court for relief from the scheduling order to file a second amended complaint. The Court denied Plaintiff's request on August 11, 2008. Defendant now moves for summary judgment against Plaintiff on all claims.

---

[1] To the extent the Court relied upon evidence to which Defendant objected, the objections are overruled. To the extent the Court did not rely on such evidence, Defendant's objections are overruled as moot.

3

## JUDICIAL NOTICE

Under Rule 201 of the Federal Rules of Evidence, a court may take judicial notice of facts that are not subject to reasonable dispute because they are either generally known or capable of accurate and ready determination. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 688-690 (9th Cir. 2001); Interstate Natural Gas Co. v. Southern California Gas Co., 209 F.2d 380, 385 (9th Cir. 1953). The Court grants Defendant's request for judicial notice of Exhibits H through M and O through S of Geoffrey D. DeBoskey's declaration because these documents are public court records and legislative history documents capable of accurate and ready determination. The Court denies Defendant's request to take judicial notice of Exhibit N of DeBoskey's declaration, the Amended Notice of Adverse Action for Miles E. Locker. The Court grants Plaintiff's request for judicial notice of Exhibits A through F because these documents are public court records and excerpts from public websites, not offered for the truth of their contents.

## LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true

4

the opposing party's evidence, if supported by affidavits or other evidentiary material. <u>Celotex</u>, 477 U.S. at 324; <u>Eisenberg</u>, 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>Intel Corp. v. Hartford Accident & Indem. Co.</u>, 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

## DISCUSSION

I.  California Labor Code §§ 201, 202, 203

Plaintiff claims that she is entitled to continuing wages under Labor Code section 203 because Defendant failed to pay her wages within the time period required by Labor Code Section 201. Section 203 provides, in relevant part, "If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201 . . . [and] 202, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty." Section 201 provides, "If an employer discharges an employee, the wages earned and unpaid at the time of the discharge are due and payable immediately." Finally, § 202 provides, "If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and

payable not later than 72 hours thereafter."[2]

Plaintiff claims that when her temporary assignment ended on August 11, she was "discharged" within the meaning of section 201, which triggered Defendant's obligation "immediately" to pay her unpaid wages. Instead of paying Plaintiff's wages immediately, Defendant paid her wages in accord with its routine schedule, issuing paychecks the Friday following the week worked.[3] The question before the Court is whether Defendant "discharged" Plaintiff when her temporary assignment ended, entitling her to "immediate" payment of wages under § 201.

Recently, the California Supreme Court addressed the meaning of "discharge" in § 201. <u>Smith v. Superior Court</u>, 39 Cal. 4th 77 (2006). In <u>Smith</u>, the plaintiff worked for L'Oreal as a hair model at a show featuring L'Oreal products. <u>Id.</u> at 81. L'Oreal didn't pay Smith for her work until over two months after the show. <u>Id.</u> Smith filed a lawsuit against L'Oreal, alleging that it failed to pay her immediately upon discharge from employment. The Court of Appeal held that discharge means "the affirmative dismissal of an employee by an employer from ongoing employment and does not include the completion of a set period of employment or a specific task." <u>Id.</u> at 84. However, the California Supreme Court disagreed and instead concluded that "an employer effectuates a discharge

---

[2] Plaintiff does not claim that she quit her employment, or that she was not working under a written contract. Therefore, her claim under § 202 fails.

[3] Plaintiff actually received her final paycheck ahead of the normal schedule. Plaintiff's last day of work for MHL was Friday, August 11, 2006, and she was paid by Kelly Services on Wednesday, August 16, 2006.

within the contemplation of sections 201 and 203, not only when it fires an employee, but when it releases an employee upon the employee's completion of the particular job assignment or time duration for which he or she was hired." Id. at 90. Therefore, Smith was protected under sections 201 and 203 of the Labor Code. Id.

Smith did not address whether the end of a temporary assignment for an employee of a temporary staffing agency rendered the employee "discharged" within the meaning of section 201. This is a key distinction between Smith and the present case. In Smith, the plaintiff was directly employed by L'Oreal to work for one day, but was paid over two months later. L'Oreal "released" Smith after one day of work. Id. In the present case, Plaintiff was employed by Kelly Services, a temporary employment agency. Through Plaintiff's relationship with Kelly Services, she was placed at MHN for six months. Plaintiff's employment relationship with Kelly Services did not end when her appointment with MHN ended. Nor did Kelly Services "release" Plaintiff after she completed working at MHN. In fact, after Plaintiff's last day of work with MHN, Plaintiff remained an active Kelly employee by going on multiple job interviews for other temporary assignments. Therefore, although Plaintiff completed her temporary job assignment with MHN, she did not complete her "job assignment or time duration for which she was hired" by her employer, Kelly Services. Thus, Plaintiff was not "dismissed" from Kelly Services when she finished working for MHN.

After the California Supreme Court decided Smith, a

7

controversy arose as to whether temporary services employees would be considered "discharged" after every temporary assignment ended. Senate Floor Analysis of Senate Bill 940 (June 24, 2008). Although Smith did not address temporary services employees, State Senator Leland Yee sponsored Senate Bill 940 to "clarify this issue by [enacting a law that] explicitly stat[es] that an employee of a temporary services employer will be paid weekly, regardless of when the assignment ends, but in the case of an employee of a temporary services employer being discharged, the employee will be paid immediately." Id. On July 22, 2008, Governor Schwarzenegger signed Senate Bill 940 into law. Effective January 1, 2009, Labor Code Section 201.3 will state that

> if an employee of a temporary services employer is assigned to work for a client, that employee's wages are due and payable no less frequently than weekly, regardless of when the assignment ends, and wages for work performed during any calendar week shall be due and payable not later than the regular payday of the following calendar week. A temporary services employer shall be deemed to have timely paid wages upon completion of an assignment if wages are paid in compliance with this subdivision.

S.B. 940, 2008 Cal. Legis. Serv. Ch. 169.

"'A statute that merely clarifies, rather than changes, existing law' may be 'applied to transactions predating its enactment.'" Valles v. Ivy Hill Corp., 410 F.3d 1071 (9th Cir. 2005) (quoting W. Sec. Bank v. Superior Court, 15 Cal. 4th 232, 243 (1997)) (emphasis in original). The Court gives particular weight to the "legislative declaration of the meaning of the original act, where the amendment was adopted soon after the controversy arose concerning the proper interpretation of the statute." Id. (quoting

8

W. Sec. Bank, 15 Cal. 4th at 243). The Court also considers "whether the legislature's expressed views have objective support in either the language or history of the legislation, and whether they are in accordance with the practice of the affected agency." Id.; see W. Sec. Bank, 15 Cal. 4th at 246-252.

Plaintiff argues that the legislative history of the Labor Code shows that SB 940 changes, rather than clarifies, existing law. Smith traced the legislative history behind Labor Code sections 201 and 202. The California Legislature first enacted an immediate wage payment provision similar to section 201 in 1911. In 1911, the Bureau of Labor Statistics (BLS) recommended and enforced wage-related legislation. Smith, 39 Cal. 4th at 89. The California Supreme Court noted that, since 1911, the BLS "consistently emphasized the success of, and continued need for, wage payment legislation to protect working men and women from exploitative employers and to alleviate the predicament of discharged employees and quitting employees who were unable to promptly obtain the wages they earned." Smith, 39 Cal. 4th at 89. Plaintiff argues that this legislative history supports an extension of the definition of "discharge" to include temporary employees who have completed a job assignment. This argument is not persuasive.

Plaintiff also points to a 1996 letter written by the Division of Labor Standards Enforcement (DLSE).[4] However, California courts

---

[4] In 1976, the DLSE "succeeded to the duties, powers, purposes, responsibilities that originally resided with the BLS Commissioner, including the power to interpret and enforce state wage and hour laws." Smith, 39 Cal. 4th at 90 n.7.

9

do not defer to DSLE opinion letters, see <u>Estrada v. FedEx Ground Package System, Inc.</u>, 154 Cal. App. 4th 1, 22 (2007), and often disagree with the DLSE's views regarding various issues, see <u>Church v. Jamison</u>, 143 Cal. App. 4th 1568, 1578-1580 (2006); <u>Conley v. Pacific Gas and Elec. Co.</u>, 131 Cal. App. 4th 260, 270-71 (2005); <u>Hudgins v. Neiman Marcus Group, Inc.</u>, 34 Cal. App. 4th 1109, 1121 (1995).

In the 1996 letter, the DLSE responded to an employer who asked it to confirm the following statement: "if an employee's assignment ends, but the employee has not been terminated by the temporary service, remains on the temporary service's payroll, and is available for future assignments, that employee has <u>not</u> been terminated, and hence, may be paid for hours worked in accordance with the temporary service's regularly weekly payroll." Locker Dec., Ex. D at 2. The DLSE refused to confirm the statement and noted that the employer did not provide a "rationale or reason for exempting an employer from the provisions of §§ 201 and 202 because the employer chooses to hire on a temporary basis." <u>Id.</u> The letter also noted that the legislature did not explicitly exempt temporary employers from § 201. <u>Id.</u> The letter did not directly address whether employees of temporary services agencies are considered terminated once they complete a job assignment even though they would still receive a weekly paycheck from the temporary employment agency.

The Court concludes that SB 940 clarifies existing law and applies to Plaintiff.

For the foregoing reasons, Defendant is entitled to judgment

on Plaintiff's first cause of action under Labor Code sections 201, 202 and 203.

## II.  Business and Professions Code §§ 17200, et seq.

Plaintiff's cause of action under Business and Professions Code § 17200 also fails because it is solely based on the alleged violations of Labor Code sections 201, 202 and 203.  Defendant did not engage in unlawful and unfair business practices because it properly paid Plaintiff after she finished her job assignment with MHN.

## III. Labor Code § 2699

Plaintiff's cause of action under Labor Code § 2699 also fails because it is solely based on the alleged violations of Labor Code sections 201, 202 and 203.  Plaintiff is not an "aggrieved employee" under § 2699 because Kelly Services did not violate any section of the Labor Code.

## CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion for summary judgment (Docket No. 51).  The clerk shall enter judgment and close the file.  Defendant shall recover its costs from Plaintiff.

IT IS SO ORDERED.

Dated: 11/12/08

_____
CLAUDIA WILKEN
United States District Judge